United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 27, 2003**

Charles R. Fulbruge III
Clerk

REVISED JUNE 2, 2003

In the
# United States Court of Appeals
for the Fifth Circuit

———————

m 02-50446

———————

CAROL FARIS,

Plaintiff-Appellee,

VERSUS

WILLIAMS WPC-I, INC., ET AL.,

Defendants,

NEXTIRA LLC,
ALSO KNOWN AS WILLIAMS COMMUNICATIONS SOLUTIONS LLC;
SUSAN BAIRD,
IN HER INDIVIDUAL CAPACITY,

Defendants-Appellants.

———————————

Appeal from the United States District Court
for the Western District of Texas

———————————

Before GARWOOD, SMITH, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Nextira LLC ("Nextira") and Susan Baird appeal a determination that a post-termination release signed by Carol Faris was unenforceable under 29 C.F.R. § 825.220(d), a regulation issued pursuant to the Family and Medical Leave Act of 1993 ("FMLA"). Concluding that enforcement of the release is not prohibited by the regulation, and that the release was ratified by Faris's failure to tender back the consideration paid for the signing of the release, we reverse and render judgment for appellants.

I.

Faris worked as an occupational health specialist for Nextira from November 1997 to June 1999, when Baird, her supervisor, terminated her, citing poor performance. Faris received two weeks' pay in lieu of notice. On the same day, she was offered an additional $4,063.32, the equivalent of one month's salary, in exchange for signing a release that purported to waive her rights to, *inter alia*, "all other claims arising under any other federal, state or local law or regulation;" it did not specifically mention the FMLA. She also received a memorandum advising that she had 45 days to consider the release and seven days to revoke if she signed, though the parties dispute whether she was so advised verbally.[1] Faris signed the release and received $4,063.32; she understood that the payment

was in return for the signing of the release. She has not tendered back the payment.

Faris sued Nextira and Baird (collectively, "Nextira"), asserting she was fired in retaliation for asserting her rights under the FMLA. Following discovery, defendants moved for summary judgment as to the enforceability of the release, and Faris moved for partial summary judgment on whether the release was *per se* unenforceable under § 825.220(d) ("the regulation").

The court denied defendants' motion and granted Faris's, holding that the plain language of the regulation dictated that FMLA claims are not waivable. The district court certified the questions of law addressed in its summary judgment order under 28 U.S.C. § 1292(b), and we granted defendants leave to bring this interlocutory appeal.

II.

Defendants assert that the district court erred in its determination that the plain language of the regulation renders Faris's waiver void, arguing instead that, under a plain language reading, the regulation does not reach the waivability of post-termination FMLA claims. Defendants contend, in the alternative, that, if the regulation is ambiguous, the relevant law under similar statutory schemes, and the common law presumption of and favor toward waivability, also support a limited reading of the regulation.[2] We conclude that

---

[1] Faris states that she was pressured into signing the release because she was confronted by Baird and another employee and told, "This is your last opportunity to sign the release if you expect to get compensation for it."

---

[2] Defendants also argue that, if the regulation extends to the waiver at issue here, it is invalid under *Chevron U.S.A. Inc. v. N.R.D.C.*, 467 U.S. 837 (1984). This argument was not presented to nor passed on by the district court, and therefore may not be considered on appeal. *See Picco v.*
(continued...)

2

the proper reading of the regulation is that it does not apply to post-dispute claims for damages under the FMLA.

We review *de novo* a grant or denial of summary judgment, *NCNB Tex. Nat'l Bank v. Johnson*, 11 F.3d 1260, 1264 (5th Cir. 1994), applying the same standard as did the district court, *Deas v. River W., L.P.*, 152 F.3d 471, 475 (5th Cir. 1998). "Summary judgment is proper when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. Questions of fact are viewed in the light most favorable to the nonmovant and questions of law are reviewed *de novo*." *Id.*

A.

Defendants argue that the plain language of the regulation demonstrates that it does not reach retaliation claims under FMLA by former employees. Defendants focus in part on the meaning of the term "employee," reasoning that the term implicitly refers only to *current* employees and cannot extend to *former* employees. Faris argues that the plain language does reach former employees, and this was the district court's conclusion.

The regulation reads, in relevant part: "Employees cannot waive, nor may employers induce employees to waive, their rights under FMLA." 29 C.F.R. § 825.220(d). FMLA § 2611(3) defines "employee" by reference to the FLSA, 29 U.S.C. § 203(e), which provides that "the term 'employee' means any individual employed by an employer."

This definition, by itself, is unhelpful. In *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992), the Court stated that this definition, as applied under ERISA, "is completely circular and explains nothing." The term "employee" may have different meanings in different acts, or even in different provisions of the same act. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341-44 (1997) (considering the meaning of employee in the title VII context). In *Robinson*, the Court noted that although some sections of title VII unambiguously refer to only current or past employees,

> those examples at most demonstrate that the term "employees" may have a plain meaning in the context of a particular sectionSSnot that the term has the same meaning in all other sections and in all other contexts. Once it is established that the term "employees" includes former employees in some sections, but not in others, the term standing alone is necessarily ambiguous and each section must be analyzed to determine whether the context gives the term a further meaning that would resolve the issue in dispute.

*Id.* at 343-44 (citations omitted). Similarly, the term "employee" is ambiguous as used in the FMLA, because in various contexts it refers to only current employees, but in other situations it refers to former employees.[3] We

---

[2] (...continued)
*Global Marine Drilling Co.*, 900 F.2d 846, 849 (5th Cir. 1990).

---

[3] Other circuits also have determined that "employee" is ambiguous in the FMLA context. *See Smith v. BellSouth Telecomms., Inc.*, 273 F.3d 1303, 1307-13 (11th Cir. 2001) (finding "employee" ambiguous and deferring to Department of Labor's interpretation that the term includes prospective employees for purposes of discrimination
(continued...)

3

must look at the context in which the term is used to see whether the waiver prohibition applies to retaliation claims.

The term "employee," throughout § 825.-220, appears consistently to refer to current employees. Several uses unambiguously refer to current employees only. Section 825.220-(b)(1) prohibits "transferring employees from one worksite to another for the purpose of reducing worksites, or to keep worksites, below the 50-employee threshold for employee eligibility under the Act[.]" Because one can transfer only a current employee, this use is unambiguous. Similarly, § 825.220(c) prohibits employers "from discriminating against employees or prospective employees who have used FMLA leave." By distinguishing between "employees" and "prospective employees," the regulation implies that "employee" describes only those that are currently employed.

Looking back to § 825.220(d), we see that the examples immediately following the statement of nonwaivability both concern current employees. The examples are as follows:

> For example, employees (or their collective bargaining representatives) cannot "trade off" the right to take FMLA leave against some other benefit offered by the employer. This does not prevent an employee's voluntary and uncoerced acceptance (not as a condition of employment) of a "light duty" assignment while recovering from a serious health condition (see § 825.702(d)). In such a circumstance the employee's right to restoration to the same or an equivalent position is available until 12 weeks have passed within the 12-month period, including all FMLA leave taken and the period of "light duty."

In the context of this regulation, there are strong indications that "employee" refers only to *current* employees. It certainly cannot be said that the usage unambiguously encompasses former employees.

## B.

Defendants argue that the regulation extends only to "substantive rights" under the FMLA, rather than to post-dispute causes of action for retaliation. The proper focus is on the meaning of the phrase "rights under FLMA," which in context limits the regulation to prospective waivers of rights under the statute.

Several factors support the interpretation that this regulation applies only to waiver of substantive rights under the statute, such as rights to leave, reinstatement, etc., rather than to a cause of action for retaliation for the exercise of those rights. The statute and regulation consistently use the term "rights under the law" or "rights under FMLA" to refer to the statutory rights to leave, certain conditions of that leave, and restoration, as set forth in 29 U.S.C. §§ 2612-14. Conversely, although § 825.220 explicates the requirements of 29 U.S.C. § 2615(a),[4] the regulation never refers

---

[3] (...continued)
claims); *Duckworth v. Pratt & Whitney, Inc.*, 152 F.3d 1, 9-11 (1st Cir. 1998) (same).

[4] 29 U.S.C. § 2615(a) states: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this chapter."

to the cause of action for damages as a right under FMLA.[5]

Indeed, the regulation begins with the title "How are employees protected who request leave or otherwise assert FMLA rights?" It then goes on to describe how FMLA rights are protected, discussing the prohibition of discrimination as a method of protecting those rights. The cause of action for discrimination, however, is never described as an FMLA right itself, within the regulation or elsewhere. Subsection (d) must be read in conjunction with the heading describing protections for employees who "request leave or otherwise assert FMLA rights," because it is responsive to that heading, limiting waiver of rights considered in the heading.

The examples of nonwaivability, quoted above, concern prohibitions on the prospective waiver of rights under FMLA. In the examples, the rights to leave and restoration are the "rights under FMLA." The cause of action for retaliation is unaddressed by these examples, but rather is a *protection for* FMLA rights, the waiver of which is not prohibited by the regulation. This is consistent with the rest of the language of the regulation. A plain reading of the regulation is that it prohibits prospective waiver of rights, not the post-dispute settlement of claims.

## C.

Our reading of the regulation is bolstered by public policy favoring the enforcement of waivers and our knowledge that similar waivers are allowed in other regulatory contexts. Waivers of the right to bring suit under the Age Discrimination in Employment Act ("ADEA") are enforced by this court and are not void as against public policy. "[A]lthough an employee cannot waive the right to file a charge with the [Equal Employment Opportunity Commission ("EEOC")], the employee can waive not only the right to recover in his or her own lawsuit but also the right to recover in a suit brought by the EEOC on the employee's behalf." *EEOC v. Cosmair, Inc., L'Oreal Hair Care Div.*, 821 F.2d 1085, 1091 (5th Cir. 1987). Therefore, although a defendant cannot waive his substantive rights under the statute, he can waive his right to money damages.

Releases of title VII claims are also enforced. In *Rogers v. Gen. Elec. Co.*, 781 F.2d 452 (5th Cir. 1986), we noted that

[a] general release of Title VII claims does not ordinarily violate public policy. To the contrary, public policy favors voluntary settlement of employment discrimination claims brought under Title VII. While a release of Title VII claims will not ordinarily violate public policy, an employee may validly release only those Title VII claims arising from discriminatory acts or practices which antedate the execution of the release. Thus, an otherwise valid release that waives prospective Title VII rights is invalid as violative of public policy.

*Id.* at 454 (citations omitted).[6]

---

[5] We also have distinguished the cause of action for retaliation from the *rights under* the FMLA. *See, e.g., Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999) (describing "substantive rights under the FMLA," as distinguished from the cause of action for retaliation).

---

[6] The EEOC has released enforcement guidance discussing the contours of non-waivable employee
(continued...)

5

It is not necessarily dispositive that post-dispute waiver is allowed under the ADEA and title VII. We must carefully consider whether there are aspects of title VII, ADEA, and FMLA that might encourage differing protections and interpretations.[7] We know, however, of no good reasonSSnor has Faris suggested oneSSwhy the government would proscribe waiver for FMLA retaliation claims and yet favor waiver of claims for age discrimination under ADEA and for civil rights violations under title VII. Had the Secretary intended such a departure from the policy employed in analogous areas, one would expect the Secretary would have manifested this intent forthrightly. Not only does the regulation not do so, it employs examples that are entirely consistent with title VII and ADEA waiver requirements.[8] The policies employed in the title VII and ADEA contexts are therefore highly persuasive.

We interpret the regulation to apply only to waivers of substantive rights under the FMLA, rather than to claims for money damages, consistent with public policy and the law under similar regulatory regimes. In practice, this may render the regulation applicable only to *current* employees, as defendants suggest, but we need not resolve that question. We therefore conclude that the regulation did not render Faris's waiver of her claims under the FMLA unenforceable.

### III.

Defendants seek review of the denial of their motion for summary judgment, arguing that the release is enforceable because Faris has not tendered back her payment for the release, precluding her from arguing misrepresentation or duress. In *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994), we held that "[o]nce a party establishes that his opponent signed a release that addresses the claims at issue, received adequate consideration, and breached the release, the opponent has the burden of demonstrating that the release was invalid because of fraud, duress, material mistake, or some other defense." But,

> [e]ven if a release is tainted by misrepresentation or duress, it is ratified if the

---

[6] (...continued) rights under statutes enforced by the Commission, which include the ADEA, title VII, the Americans with Disabilities Act, and the Age Discrimination in Employment Act. *See* EEOC NOTICE NO. 915.002 § I (Apr. 10, 1997). Though the Commission "recognized that individuals possess a non-waivable right to file charges with the EEOC," *id*. § III(A), it expressed its "support for *post-dispute agreements* entered into knowingly and voluntarily to settle claims of discrimination," *id*. § III(C) (emphasis added).

[7] *See Pettway v. Am. Cast Iron Pipe Co.*, 411 F.2d 998, 1005-06 (5th Cir. 1969) (employing the FLSA and the NLRA in interpreting title VII, but noting that reliance on other statutes "must necessarily be guarded because the differences between those Acts and title VII may well outnumber the similarities"); *see also Smith*, 273 F.3d at 1310 ("While cases decided under other employment statutes prohibiting discrimination and retaliation may be instructive, we must be attentive to the way the statutes differ in their language, their purposes, and their scope of protection.") (citing *Pettway*).

[8] Although no court has explicitly considered the argument presented by Faris, two circuits have allowed waiver of FMLA retaliation claims. *See Halvorson v. BSA*, 2000 U.S. App. LEXIS 9648, at *6 (6th Cir. 2000); *Schoenwald v. ARCO Alaska, Inc.*, 1999 U.S. App. LEXIS 20955, at *5 (9th Cir. 1999).

releasor retains the consideration after learning that the release is voidable. A person who signs a release, then sues his or her employer for matters covered under the release, is obligated to return the consideration. Offering to tender back the consideration after obtaining relief in the lawsuit would be insufficient to avoid a finding of ratification.

*Id*. at 937.

Although Faris does allege duress, it is undisputed that she received $4,063.32 for signing the release and has not tendered back the consideration. The release is ratified. We therefore REVERSE and RENDER judgment for defendants.