Rehearing granted, June 14, 2006

**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

BARBARA TAYLOR,
　　　　　　　　*Plaintiff-Appellant,*

v.

PROGRESS ENERGY, INCORPORATED,
　　　　　　　　*Defendant-Appellee.*

No. 04-1525

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
Malcolm J. Howard, District Judge.
(CA-03-73-7-H)

Argued: February 1, 2005

Decided: July 20, 2005

Before MICHAEL and DUNCAN, Circuit Judges,
and Robert E. PAYNE, United States District Judge for the Eastern
District of Virginia, sitting by designation.

---

Reversed in part, vacated in part, and remanded by published opinion.
Judge Michael wrote the opinion, in which Judge Duncan and Judge
Payne joined.

---

**COUNSEL**

April Gordon Dawson, DAWSON, DAWSON & DAWSON, P.A.,
Graham, North Carolina, for Appellant. Zebulon Dyer Anderson,
SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL &
JERNIGAN, Raleigh, North Carolina, for Appellee.

---

**OPINION**

MICHAEL, Circuit Judge:

Barbara Taylor sued Progress Energy, Inc. (Progress), the parent company of her former employer, Carolina Power & Light Company (CP&L), alleging violations of her rights under the Family and Medical Leave Act of 1993 (FMLA or Act), 29 U.S.C. § 2601 *et seq.*, including the violation of (1) her substantive right to twelve weeks of unpaid leave to deal with a serious health condition and (2) her proscriptive right not to be discriminated or retaliated against for exercising her substantive FMLA rights. Progress argued in its motion for summary judgment that a release Taylor signed constituted a valid waiver of her FMLA claims. The district court granted Progress's motion, thereby rejecting Taylor's argument that 29 C.F.R. § 825.220(d), a Department of Labor (DOL) regulation, bars the waiver or release of FMLA rights. We conclude that § 825.220(d) prohibits the release as it relates to Taylor's FMLA claims and that the regulation is valid under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). We therefore reverse the district court's summary judgment order and remand for further proceedings.

I.

Because the district court granted Progress's motion for summary judgment, we state the facts in the light most favorable to Taylor, the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In 1993 Taylor started working for CP&L, a subsidiary of Progress, in the Document Services Unit at the Brunswick Nuclear Plant in North Carolina. She was originally hired as a technical aide and later became a data management assistant. In April 2000 she began experiencing extreme pain and swelling in her right leg. Taylor consulted her doctor, who ordered a week of bed rest that caused her to miss five days of work in late April or early May. The doctor informed Taylor that she would need to undergo a series of medical tests, including heart tests, in an effort to determine the cause of her symptoms. Thereafter, during the months of June and July, Taylor missed a number of days of work due to medical testing and treatment. Immediately after her first health-related absence in April or

May, and again when she had to miss work for medical tests in June and July, Taylor asked a representative of CP&L's human resources department about the possibility of leave under the FMLA. The representative told Taylor that she was not eligible for FMLA leave because she had not been absent from work for more than five consecutive days at any one time.

In August 2000 Taylor underwent a spinal tap in a further effort to determine the cause of her health problems. Complications from this procedure caused her to miss a full week (five days) of work and additional days in the following weeks. In October Taylor received a written warning from her supervisor and the human resources representative stating that she "had exceeded the company's average sick time." J.A. 53. When Taylor sought guidance on how best to handle her health-related absences, she was told simply that she needed to improve her attendance. In November Taylor underwent more testing that kept her out of work for another five days. This testing revealed that an abdominal mass was the cause of the pain and swelling in Young's leg, and her doctor recommended immediate surgery to remove the mass. Taylor informed the human resources representative of the most recent test results and again asked whether any of her missed time from work qualified as FMLA leave. Again, the departmental representative answered that the missed time did not qualify because Taylor had not been out of work for more than five consecutive days. Taylor had surgery to remove the abdominal mass in December 2000. She was out of work for approximately six weeks and was told that this period qualified as FMLA leave. Taylor later discovered that she had been credited with FMLA leave for only four of these six weeks.

In February 2001 Taylor received her performance evaluation for the prior year. She was given a poor productivity rating because of her health-related absences, and she received only a one-percent pay raise while the average raise given by CP&L was approximately six percent. Soon thereafter (in March), Taylor learned that CP&L planned to lay off some of its employees in a reduction in force and that the company intended to select employees for dismissal based, at least in part, on past performance. Taylor contacted the DOL about CP&L's refusal to grant her FMLA leave and was told that her prior

medical leave qualified under the FMLA and that FMLA absences could not be counted against her for any reason.

In an effort to save her job, Taylor asked CP&L on several occasions to correct her 2000 performance evaluation to reflect that her various absences qualified as FMLA leave. A human resources representative denied Taylor's requests, and the company informed her about two weeks later (on May 17, 2001) that her employment was being terminated. Taylor was told that she was eligible for benefits under CP&L's transition plan, which included seven weeks of paid administrative leave. She was also told that she would receive additional benefits (including monetary compensation) if she signed and returned a general release and severance agreement (the release) within forty-five days. Taylor signed and returned the release to CP&L on June 4. The relevant section reads as follows:

> *GENERAL RELEASE OF CLAIMS.* IN CONSIDERATION OF SEVERANCE PAYMENTS MADE BY THE COMPANY, EMPLOYEE HEREBY RELEASES CP&L [AND] ITS PARENT . . . FROM *ALL* CLAIMS AND WAIVES *ALL* RIGHTS EMPLOYEE MAY HAVE OR CLAIM TO HAVE RELATING TO EMPLOYEE'S EMPLOYMENT WITH CP&L . . . OR EMPLOYEE'S SEPARATION THEREFROM, arising from events which have occurred up to the date Employee executes this General Release, including *but not limited to*, claims . . . for relief, including *but not limited to*, front pay, back pay, compensatory damages, punitive damages, injunctive relief, attorneys' fees and costs or any other remedy, arising under: (i) the Age Discrimination In Employment Act of 1967, as amended, ("ADEA"); (ii) the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"); (iii) Title VII of the Civil Rights Act of 1964, as amended; (iv) the Energy Reorganization Act and Atomic Energy Act, both as amended; (v) the Americans With Disabilities Act ("ADA"); (vi) any wrongful termination claim under any state or federal law; (vii) claims for benefits under any employee benefit plan maintained by CP&L related to service credits or other issues; (viii) claims under the Older Workers Benefit Protection Act

of 1990 ("OWBPA"); and (ix) any other federal, state or local law.

J.A. 18. Thus, while the release does not mention FMLA claims by name, it does include a catchall category for "other federal . . . law" claims besides those specifically listed. *Id.* On July 20, 2001, CP&L sent Taylor a check for approximately $12,000 pursuant to the terms of the release and related documents. (Taylor did not return the money when she later filed this action against Progress.)

After her separation from CP&L, Taylor again contacted the DOL concerning the company's failure to designate her health-related absences as FMLA leave, the resulting negative performance evaluation, and the company's use of the negative evaluation in its decision to terminate her employment. Taylor was told that she could try to resolve her concerns directly with CP&L, so she contacted the director of the company's human resources department in January 2002. The director corrected Taylor's performance evaluation but failed to adjust her February 2001 salary increase to reflect the improved evaluation and failed to address any of the other issues Taylor had raised.

Thereafter, on May 9, 2003, Taylor sued Progress in federal court under 29 U.S.C. § 2617, alleging that the company had violated the FMLA by (1) not fully informing her of her FMLA rights, (2) improperly denying her requests for medical leave, (3) terminating her employment because of her medical absences, and (4) terminating her employment because she complained about the company's violations of the FMLA. The complaint sought an injunction directing Progress to rehire Taylor, compensatory damages, liquidated damages, and attorneys' fees and costs. Progress filed a motion for summary judgment, arguing that the release was valid and provided the company a complete defense to Taylor's suit. In response Taylor contended that 29 C.F.R. § 825.220(d) — which provides that "[e]mployees cannot waive, nor may employers induce employees to waive, their rights under [the] FMLA" — barred enforcement of the release insofar as her FMLA rights are concerned. At the same time, Taylor moved to amend her complaint to substitute CP&L as a defendant and to add an allegation that CP&L's actions had been willful. The district court granted Progress's motion for summary judgment, holding that § 825.220(d) does not render the release unenforceable.

The district court denied as futile Taylor's motion to amend her complaint, concluding that the release would also bar suit pursuant to the proposed amendment. This appeal followed.

## II.

## A.

Taylor argues that the district court erred in granting summary judgment to Progress because 29 C.F.R. § 825.220(d) prevents the company from enforcing the release insofar as Taylor's FMLA rights are concerned. The district court, relying on *Faris v. Williams WPC-I, Inc.*, 332 F.3d 316 (5th Cir. 2003), held that § 825.220(d) prohibits only the prospective waiver of substantive FMLA rights. Thus, according to the district court, the regulation does not apply to (1) the retrospective waiver or release of FMLA claims or (2) the waiver or release of claims that an employer has discriminated or retaliated against an employee for the exercise of her substantive FMLA rights. The district court's interpretation of the regulation is a legal conclusion that we review de novo. *See United States v. Lofton*, 233 F.3d 313, 317 n.4 (4th Cir. 2000).

We disagree with the district court's interpretation of § 825.220(d). The regulation's plain language prohibits both the retrospective and prospective waiver or release of an employee's FMLA rights. In addition, the regulation applies to all FMLA rights, both substantive and proscriptive (the latter preventing discrimination and retaliation). Finally, the DOL, by recognizing that the FMLA's enforcement scheme is analogous to that of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, has indicated that § 825.220(d) permits the waiver or settlement of FMLA claims only with the prior approval of the DOL or a court. For reasons we discuss more fully below, we conclude that the regulation is based on a permissible construction of the FMLA, and it is not "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844. As a result, we agree with Taylor that § 825.220(d) renders the release unenforceable with respect to her FMLA rights.

## B.

As noted above, the FMLA creates both substantive and proscriptive rights. *See Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th

Cir. 1999); *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159-60 & nn.2-4 (1st Cir. 1998); *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712-13 (7th Cir. 1997). The substantive rights include an employee's right to take up to twelve weeks of unpaid leave in any one-year period because of a serious health condition, 29 U.S.C. § 2612(a)(1)(D); the right to take such leave on an intermittent basis, or on a reduced work schedule, when medically necessary, *id.* § 2612(b)(1); and the right to reinstatement following such leave, *id.* § 2614(a)(1). The proscriptive rights include an employee's right not to be discriminated or retaliated against for exercising substantive FMLA rights or for otherwise opposing any practice made unlawful by the Act. *Id.* §§ 2614(a)(2), 2615(a). Taylor's complaint alleges the violation of both types of FMLA rights.

## C.

### 1.

Again, 29 C.F.R. § 825.220(d) states that "[e]mployees cannot waive, nor may employers induce employees to waive, their rights under [the] FMLA." This appeal turns on the proper interpretation of the regulation, and our analysis is controlled by *Chevron*. We therefore begin with *Chevron*'s first step and ask "whether Congress has directly spoken to the precise question" of whether an employee can waive (or whether an employer can induce an employee to waive) her rights under the FMLA. 467 U.S. at 842. "[I]f the statute is silent or ambiguous with respect to [this] specific issue," *id.* at 843, then Congress "has by implication delegated authority to the agency charged with administering the statute" to promulgate regulations to deal with the issue, *United States v. Deaton*, 332 F.3d 698, 708 (4th Cir. 2003). The FMLA neither explicitly provides for nor precludes the waiver or settlement of claims. *See* 29 U.S.C. § 2601 *et seq*. Congress therefore has not spoken directly to this particular issue, but it has charged the Secretary of Labor with the job of administering the FMLA, *see, e.g.*, *id.* §§ 2616, 2617(b), and "prescrib[ing] such regulations as are necessary to carry out" the Act, *id.* § 2654. In accordance with this statutory delegation of rulemaking authority, the Secretary promulgated comprehensive regulations, including 29 C.F.R. § 825.220(d), to implement the FMLA. *See* 29 C.F.R. § 825.100 *et seq*. We thus conclude for purposes of *Chevron*'s step one that Congress has not spo-

ken directly on the issue of whether FMLA rights can be waived and that the Act grants the Secretary (or the DOL) authority to address this issue.

2.

a.

Before proceeding to *Chevron*'s step two, we must resolve the dispute over what § 825.220(d) actually means. *See Deaton*, 332 F.3d at 709. After that, we will be in a position to decide at step two whether the regulation is based on a permissible construction of the statute. *See Chevron*, 467 U.S. at 843. As for § 825.220(d)'s meaning, we conclude that the regulation prohibits both the prospective and retrospective waiver of any FMLA right (whether substantive or proscriptive) unless the waiver has the prior approval of the DOL or a court. This means that § 825.220(d) renders the release unenforceable with respect to Taylor's FMLA claims.

In reaching this conclusion, we first examine § 825.220(d)'s plain language, *see Deaton*, 332 F.3d at 709, which unambiguously prohibits the waiver or release of FMLA claims. The regulation states that "[e]mployees cannot waive, nor may employers induce employees to waive, their rights under [the] FMLA." 29 C.F.R. § 825.220(d). Section 825.220(d) thus regulates the employment relationship by prohibiting any employer-employee agreement that would adjust or eliminate FMLA rights. Moreover, the regulation does not limit itself to precluding only the prospective waiver of FMLA rights. The key word is "waive," and we have found no definition of the word that suggests it has only a prospective connotation. Black's defines "waive" as "[t]o abandon, renounce, or surrender (a claim, privilege, right, etc.); to give up (a right or claim) voluntarily." Black's Law Dictionary 1611 (8th ed. 2004). Webster's defines "waive" as "to give up . . .: FORSAKE . . . to withdraw . . . to relinquish voluntarily (as a legal right) . . . to refrain from pressing or enforcing (as a claim or rule) . . . RELINQUISH." Webster's Third New International Dictionary 2570 (2002). Indeed, "waiver" is commonly used to describe the post-dispute settlement or release of claims. *See, e.g.*, *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 426-27 (1998) (discussing that the general statutory prohibition on the waiver of ADEA claims

established by the OWBPA applies to the post-dispute settlement or release of such claims).

By the same token, nothing in the text of § 825.220 indicates that the waiver prohibition protects only substantive FMLA rights and not the proscriptive FMLA rights to be free from discrimination and retaliation. Section 825.220 begins with the question, "How are employees protected who request leave *or otherwise assert FMLA rights*?" 29 C.F.R. § 825.220 (emphasis added). The section immediately preceding the anti-waiver provision explicitly recognizes that employers may not discriminate or retaliate against employees who take FMLA leave. *Id.* § 825.220(c) (explaining, for example, that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions"). The regulation therefore recognizes that the FMLA protects a set of rights beyond the substantive right to take twelve weeks of leave, including the proscriptive rights to be free from discrimination and retaliation for the exercise of substantive FMLA rights. Thus, because an employee who seeks redress for an employer's FMLA-related discrimination or retaliation is "otherwise assert[ing] FMLA rights," *id.* § 825.220, she is asserting "rights under [the] FMLA" that cannot be waived, *id.* § 825.220(d). This accords with the FMLA's statutory text, which affords protection to substantive as well as proscriptive rights. *See supra* part II.B. It is therefore clear that the employee "rights under [the] FMLA" protected by the anti-waiver provision, 29 C.F.R. § 825.220(d), must include both (1) the right to twelve weeks of leave and to reinstatement following that leave (the substantive rights) and (2) the right to be free from FMLA-related discrimination and retaliation (the proscriptive rights).

Section 825.220(d)'s plain meaning is further confirmed by examining what the DOL said it intended the provision to mean at the time the final regulations were published. The DOL specifically considered and rejected proposed amendments that would have reflected the interpretation urged by Progress and adopted by the district court. In the "Summary of Major Comments" published with the final version of the FMLA implementing regulations, the DOL notes the concerns expressed by several large corporations and the U.S. Chamber of Commerce regarding "the 'no waiver of rights' provisions." Preamble to the Final Regulations Implementing the Family and Medical Leave

Act of 1993, 60 Fed. Reg. 2180, 2218 (Jan. 6, 1995). These business interests "recommended explicit allowance of waivers and releases in connection with [the] settlement of FMLA claims and as part of a severance package (as allowed under Title VII and ADEA claims, for example)." *Id.* In response to these concerns, the DOL explained that it had "given careful consideration to the comments . . . and . . . concluded that prohibitions against employees waiving their rights and employers inducing employees to waive their rights constitute sound public policy under the FMLA, as is also the case under other labor standards statutes such as the FLSA." *Id.* By rejecting business's suggestion that waivers and releases should be allowed in connection with the post-dispute settlement of FMLA claims, the DOL made clear that § 825.220(d) was never intended to have only prospective application.

The DOL's recognition that the FMLA's enforcement scheme is meant to parallel the FLSA's also indicates that employees may waive or release their FMLA rights with the prior approval of the DOL or a court. *See id.* In accepting the parallel between the FMLA and the FLSA, the DOL recognized that Congress intended for the FMLA to provide employee protections similar to those provided by the FLSA. *See* 29 U.S.C. §§ 216(b)-(c), 2617(a)-(b); *see also infra* part II.C.3. If the DOL had adopted business's recommendation of incorporating Title VII and ADEA rules on waiver into the FMLA regulations, this would have indicated acceptance of an enforcement scheme in which FMLA claims could be settled or released without agency or court approval. The DOL, however, rejected the Title VII/ADEA approach by analogizing the FMLA's enforcement scheme to that of the FLSA. *See* Preamble to the Final Regulations Implementing the Family and Medical Leave Act of 1993, 60 Fed. Reg. at 2218. The rights guaranteed by the FLSA cannot be waived or settled without prior DOL or court approval. *See Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740, 745 (1981); *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 114-16 (1946); 29 U.S.C. § 216(b)-(c). Thus, the DOL — "the agency charged with administering" the FMLA, *Deaton*, 332 F.3d at 708 — has acknowledged that Congress intended for the restrictions imposed on the settlement of FLSA claims to be duplicated in the FMLA's regulatory scheme. *See* 29 U.S.C. §§ 216(b)-(c), 2617(a)-(b); *see also infra* part II.C.3.

We therefore hold that, in the absence of prior approval of the DOL or a court, 29 C.F.R. § 825.220(d) bars the waiver of both substantive and proscriptive FMLA rights. This is the case regardless of whether the waiver is executed before or after the employer commits the FMLA violation.

### b.

We pause to point out that the district court's reliance on the Fifth Circuit's decision in *Faris* was misplaced. The court in that case asserted that a "plain reading" of § 825.220(d) led to the conclusion that the regulation prohibits the "prospective waiver of [substantive] rights, not the post-dispute settlement of claims" alleging retaliation. *Faris*, 332 F.3d at 321. And while the court in *Faris* did not find it "necessarily dispositive that post-dispute waiver is allowed" under Title VII and the ADEA, the waiver doctrines from those statutes were considered "highly persuasive" because the court could think of "no good reason" to treat FMLA waivers any differently. *Id.* at 321-22. As a result, the *Faris* court (like the district court here) concluded that § 825.220(d)'s prohibition does not apply to (1) the retrospective waiver or release of FMLA claims or (2) any waiver or release of a claim that an employer has discriminated or retaliated against an employee for exercising her substantive FMLA rights. Again, we conclude that § 825.220(d) plainly prohibits the waiver or release of FMLA claims (unless there is DOL or court approval), and we therefore disagree with the Fifth Circuit's analysis. The definitions and common usage of the verb "waive," the plain meaning and context of § 825.220(d), and the DOL's own understanding of the regulation at the time of its adoption all point to the same conclusion: that § 825.220(d) does not make a distinction between (1) prospective and retrospective waivers or (2) the substantive and proscriptive rights guaranteed to every employee covered by the FMLA. From our discussion above, it is likewise clear that the DOL intended, by noting the parallels between the FMLA and the FLSA, to treat waivers under the FMLA differently from waivers under Title VII and the ADEA. In taking this course, the DOL was simply following the statutory text and congressional intent. *See infra* part II.C.3.

### c.

The district court, to support its holding that § 825.220(d) does not bar the release of most FMLA claims, suggested that a contrary ruling

would cast doubt on our decision in *O'Neil v. Hilton Head Hospital*, 115 F.3d 272 (4th Cir. 1997). In *O'Neil* we held that a general arbitration clause in an employment agreement applied to claims asserted under the FMLA. *Id.* at 273, 276. However, agreeing to submit a claim to arbitration is entirely different from agreeing to waive it. An agreement to arbitrate preserves the claim; the agreement simply shifts the forum for resolving the claim from a court to an arbitration setting. *O'Neil*, in short, has no bearing on the proper interpretation of § 825.220(d).

d.

In addition to defending the district court's reasoning, Progress argues that summary judgment is appropriate because Taylor ratified the release of her FMLA claims by retaining the consideration she received in exchange for executing the general release. We disagree. Because FMLA claims are not waivable by agreement, neither are they waivable by ratification. *See Bluitt v. Eval Co. of Am.*, 3 F. Supp. 2d 761, 764 n.1 (S.D. Tex. 1998); *see also Oubre*, 522 U.S. at 426-27. Section 825.220(d) provides that "[e]mployees cannot waive . . . their rights under [the] FMLA," and it makes no exception for waiver by ratification. We take no position on the effect our decision today might have on the continuing validity of the release with respect to non-FMLA claims, but we note that the release contains a severability clause. Moreover, in future proceedings the district court "may need to inquire whether the employer has claims for restitution, recoupment, or setoff against the employee." *Oubre*, 522 U.S. at 428. These questions, which "may be complex [if] a release is effective as to some claims but not as to" others, are not before us today. *Id.*

3.

We finally reach the question of whether § 825.220(d) satisfies *Chevron*'s step two; here we ask whether the regulation is "based on a permissible construction" of the FMLA. 467 U.S. at 843. Congress directed the Secretary of Labor to issue regulations "necessary to carry out" the Act, 29 U.S.C. § 2654, and "[t]he Secretary's judgment that a particular regulation fits within this statutory constraint must be given considerable weight," *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86 (2002). Nevertheless, a regulation cannot be upheld

if it is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844.

Progress contends that if we conclude (as we just have) that the regulation bars enforcement of the release, then the regulation itself must be deemed unenforceable. First, Progress argues that a regulation barring the waiver or release of claims is inconsistent with the general public policy favoring settlement. Second, Progress argues that congressional silence on the issue of waiver demonstrates an intent not to regulate the waiver or release of FMLA claims. Third, Progress argues that a regulation entirely prohibiting the waiver or release of claims would be arbitrary and therefore invalid under *Chevron*.

Progress's first argument, pressing general public policy concerns, is misplaced because our inquiry under *Chevron*'s step two does not focus on whether the regulatory prohibition of FMLA waivers is advisable as a policy matter. Given the DOL's interpretive regulation, we cannot "simply impose [our] own construction on the statute, as would be necessary in the absence of an administrative interpretation." *Chevron*, 467 U.S. at 843 (footnote omitted). Rather, we must decide whether 29 C.F.R. § 825.220(d) is "based on a permissible construction" of the FMLA or whether the regulation is instead "manifestly contrary to the statute." *Chevron*, 467 U.S. at 843-44. We agree with Progress that there is a general public policy favoring the post-dispute settlement of claims. However, because the FMLA's language, structure, and the congressional intent behind its enactment are clear (as we demonstrate below), the general policy favoring settlement has no place in our *Chevron* step two analysis of whether the DOL's implementing regulations are based on a permissible construction of the statute. *See Cent. Bank v. First Interstate Bank*, 511 U.S. 164, 188 (1994).

We also reject Progress's second argument that Congress's silence on the question of waiver should be interpreted as indicating an intent to allow the waiver or release of FMLA claims. We do so because "inferences from congressional silence, in the context of administrative law, are often treacherous." *EEOC v. Seafarers Int'l Union*, 394 F.3d 197, 202 (4th Cir. 2005) (internal quotation marks omitted); *see*

*also Brown v. Gardner*, 513 U.S. 115, 121 (1994) (casting considerable doubt on using congressional silence to interpret a statute).

As for Progress's third argument — that a complete prohibition on the waiver or release of FMLA claims would be arbitrary — we have already explained that § 825.220(d) allows an employee to waive FMLA rights with the prior approval of the DOL or a court. *See supra* part II.C.2.a. In promulgating the implementing regulations, the DOL explicitly analogized the FMLA to "other labor standards statutes such as the FLSA." Preamble to the Final Regulations Implementing the Family and Medical Leave Act of 1993, 60 Fed. Reg. at 2218. The agency charged with administering the statute thus concluded that the FMLA was (and was intended to be) more similar to the FLSA than to employment discrimination statutes such as Title VII, and the agency (the DOL) therefore adopted a standard governing FMLA waivers that tracks the standard governing FLSA waivers. The DOL's approach is consistent with congressional intent and the statutory text because Congress indicated that the FMLA was to be implemented in the same way as the FLSA. *See, e.g.*, S. Rep. No. 103-3, at 35 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 37 (explaining that the FMLA's "enforcement scheme is modeled on the enforcement scheme of the FLSA" and that "[t]he relief provided in FMLA also parallels the provisions of the FLSA"); *see also Arban v. W. Publ'g Corp.*, 345 F.3d 390, 407-08 (6th Cir. 2003) (explaining the strong link between the remedial provisions of the FMLA and the FLSA); *Diaz*, 131 F.3d at 712-13 (distinguishing the FMLA from employment discrimination statutes and likening it to other statutes, such as the FLSA, which "set substantive floors").

Again, the Supreme Court has consistently held that the rights guaranteed by the FLSA cannot be waived by private agreement between employer and employee. *See Barrentine*, 450 U.S. at 740, 745; *Gangi*, 328 U.S. at 114-16. Claims for FLSA violations can, of course, be settled when the settlement is supervised by the DOL or a court. The DOL is statutorily authorized to supervise the settlement of claims for employer violations of §§ 206 and 207 of the FLSA (minimum wage and maximum hour laws), 29 U.S.C. § 216(c), and the FMLA instructs the DOL to "receive, investigate, and attempt to resolve complaints of [FMLA] violations . . . *in the same manner* that the [DOL] receives, investigates, and attempts to resolve complaints

of violations of sections 206 and 207" of the FLSA, *id.* § 2617(b)(1) (emphasis added). The DOL "attempts to resolve complaints of violations of [FLSA] sections 206 and 207," *id.*, when it "supervise[s] the payment of . . . unpaid minimum wages or . . . unpaid overtime compensation" under FLSA §§ 206 or 207, a payment which, if accepted by an employee, "constitute[s] a waiver" of the employee's FLSA claim, *id.* § 216(c). Likewise, the DOL "attempt[s] to resolve complaints of [FMLA] violations . . . in the same manner that [it] . . . attempts to resolve complaints of [FLSA] violations," *id.* § 2617(b)(1), when it supervises the settlement of an employee's FMLA claim. In other words, the DOL has *statutory* authority to supervise and approve the settlement and waiver (or release) of FMLA claims. Judicial authority to supervise the settlement of both FLSA and FMLA claims is implicit in both labor standards statutes by virtue of the statutory grant of "Federal or State court" jurisdiction to hear and determine such claims. *Id.* §§ 216(b) (FLSA), 2617(a)(2) (FMLA). Thus, Progress's third argument that 29 C.F.R. § 825.220(d) is arbitrary fails because the regulation must be construed to allow the waiver or release of FMLA claims with prior DOL or court approval.

Moreover, the regulation is entirely consistent with the statute. The FMLA was enacted to set a minimum labor standard for family and medical leave, *see* 29 U.S.C. § 2601, and was analogized to child labor and occupational safety laws as well as the FLSA, *see* H.R. Rep. No. 103-8, pt. 1, at 21-22 (1993); S. Rep. No. 103-3, at 4-5, *reprinted in* 1993 U.S.C.C.A.N. 3, 6-7. FMLA's minimum standard was justified by a concern that middle- and low-income workers should not be forced to choose between keeping their jobs and quitting to deal with pressing medical or family care needs. *See* 29 U.S.C. § 2601(a)(3); S. Rep. No. 103-3, at 7-12, *reprinted in* 1993 U.S.C.C.A.N. 3, 10-14. Without a minimum leave standard, the "minority of employers who act irresponsibly" could more easily exploit employees at the times when they are most vulnerable. S. Rep. No. 103-3, at 5, *reprinted in* 1993 U.S.C.C.A.N. 3, 7. Moreover, a uniform family and medical leave standard was regarded as necessary because it would "help all businesses maintain a minimum floor of protection for their employees without jeopardizing or decreasing their competitiveness." *Id.* at 18, *reprinted in* 1993 U.S.C.C.A.N. at 20; *see also id.* at 5, *reprinted in* 1993 U.S.C.C.A.N. at 7 ("A central reason that labor standards are necessary is to relieve the competitive pressure placed on responsible

employers by employers who act irresponsibly. Federal labor standards take broad societal concerns out of the competitive process so that conscientious employers are not forced to compete with unscrupulous employers."). Section 825.220(d)'s prohibition against the waiver of rights is based on this reasoning. Without the regulation's non-waiver provision, the unscrupulous employer could systematically violate the FMLA and gain a competitive advantage by buying out FMLA claims at a discounted rate.

In sum, we conclude that § 825.220(d) is "based on a permissible construction" of the FMLA, *Chevron*, 467 U.S. at 843, especially when we consider the Act "as a symmetrical and coherent regulatory scheme" to guarantee family and medical leave to all covered employees, *Ragsdale*, 535 U.S. at 86 (internal quotation marks omitted). The regulation is consistent with the FMLA and must be upheld because it is not "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 844.

### III.

Because the district court did not believe that § 825.220(d) barred the release of Taylor's FMLA claims, the court denied as futile her motion to amend her complaint to substitute CP&L as a defendant and to add an allegation that CP&L's actions were willful. In light of our holding that § 825.220(d) bars enforcement of the release with respect to the waiver of Taylor's FMLA rights, we also hold that the district court's order denying Taylor's motion to amend must be vacated. The motion should be reconsidered on remand.

### IV.

We hold that, without prior DOL or court approval, 29 C.F.R. § 825.220(d) bars the prospective and retrospective waiver or release of the FMLA's substantive and proscriptive rights. We therefore reverse the district court's order granting summary judgment to Progress. We also vacate the district court's order denying Taylor's motion to amend her complaint. The case is remanded for further proceedings.

*REVERSED IN PART,*
*VACATED IN PART,*
*AND REMANDED*