<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1158**

JOANN WHITING,

　　　　　　　Plaintiff - Appellant,

　　　v.

THE JOHNS HOPKINS HOSPITAL; JOHNS HOPKINS HEALTH SYSTEM
CORPORATION,

　　　　　　　Defendants - Appellees.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.　William D. Quarles, Jr., District
Judge.　(1:09-cv-01619-WDQ)

Argued:　January 26, 2011　　　　　Decided:　March 14, 2011

Before TRAXLER, Chief Judge, and NIEMEYER and AGEE, Circuit
Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Thomas Bernard Corbin, THOMAS B. CORBIN, PA, Baltimore,
Maryland, for Appellant.　Jay Robert Fries, KRUCHKO & FRIES,
Baltimore, Maryland, for Appellees.　**ON BRIEF:** Kathleen A.
Talty, KRUCHKO & FRIES, Baltimore, Maryland, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Joann Whiting appeals a district court order granting judgment against her in her action against The Johns Hopkins Hospital and The Johns Hopkins Health System Corporation (together, "Hopkins") for violating the Family and Medical Leave Act ("FMLA"), see 29 U.S.C.A. §§ 2601-54 (West 2009 & Supp. 2010). Finding no error, we affirm.

I.

Whiting worked for Hopkins from January 1998 to August 2007 as a patient financial service representative. She took medical leave pursuant to the FMLA from June 2007 to August 2007. When approving Whiting's leave request, Hopkins stated that her remaining FMLA leave would be exhausted on August 8, 2007, and that she would need a leave of absence for short-term disability if she needed to take any more time off from work. Hopkins initially approved such short-term disability through September 10, 2007, but it terminated Whiting on August 25, 2007, informing her she had been replaced.

Whiting subsequently filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that Hopkins had terminated her in violation of the Americans with Disabilities Act, see 42 U.S.C.A. §§ 12101-12213 (West 2005 & Supp. 2010). The charge alleged that she had been discharged

2

because of her disability inasmuch as she had been on leave because of her disability. After the parties participated in EEOC-monitored mediation, they reached two settlement agreements: the Mediation Settlement Agreement ("MSA") and the Release and Settlement Agreement ("RSA").

The MSA, which the EEOC approved, provided that Whiting would not institute a lawsuit against Hopkins under various federal employment discrimination laws. The RSA, which was not approved by the EEOC, released Hopkins "from any and all causes of action, known or unknown, arising out of or in any way relating to [Whiting's] employment." J.A. 28. In this agreement, Whiting also promised that she would "neither file nor cause or permit to be filed on her behalf . . . any lawsuits, claims, grievances, complaints or charges in any forum, or any dispute arising out of her employment relationship with [Hopkins] through December 20, 2007." J.A. 28. In exchange for these promises, Whiting received, among other consideration, $4,500.00, less applicable taxes.

More than a year after executing these two releases, Whiting filed the present action in federal district court, alleging Hopkins violated her FMLA rights during her 2007 employment. Hopkins moved to dismiss, or in the alternative, for summary judgment, on the basis that the settlement agreements barred the suit. Hopkins relied on a Department of

3

Labor ("DOL") regulation stating that while "[e]mployees cannot waive . . . their prospective rights under FMLA," this prohibition "does not prevent the settlement or release of FMLA claims by employees based on past employer conduct without the approval of the [DOL] or a court." 29 C.F.R. § 825.220(d) (2009). This regulation was a revision of a regulation originally promulgated in 1995, which provided simply that "[e]mployees cannot waive . . . their rights under the FMLA." 29 C.F.R. § 825.220(d) (2007). We had held that under the original version, not only could employees not waive their prospective rights, but they also could not waive their rights to proceed on FMLA claims for past employer conduct. See Taylor v. Progress Energy, Inc., 493 F.3d 454, 457-63 (4th Cir. 2007). For her part, Whiting maintained that the revised regulation did not apply in her case since it was promulgated more than a year after the settlement agreements had been signed. She alternatively contended that the revised regulation was invalid because it was manifestly contrary to the FMLA. Rejecting both of Whiting's arguments, the district court granted judgment to Hopkins.

4

Whiting first argues that the district court erred in applying revised 29 C.F.R. § 825.220(d) retroactively to her case. We disagree.

Although retroactive application of a statute or regulation is generally not favored, see Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988), when an amendment clarifies the existing law rather than changing it, we give the clarification "great weight" in considering the meaning of the original law, Brown v. Thompson, 374 F.3d 253, 260 (4th Cir. 2004) (internal quotation marks omitted). In determining whether an amendment is clarifying, we consider the intent of the body that enacted the amendment. See id. at 259.

Here, the DOL's intent to clarify the meaning of the original regulation is unmistakable. The preamble to the FMLA regulations notes that, prior to the amendment, a conflict existed between this circuit and the Fifth Circuit regarding the proper interpretation of § 825.220(d). See 73 Fed. Reg. 67987 (Nov. 17, 2008). Compare Taylor, 493 F.3d at 457-63 (holding that § 825.220(d) precluded both prospective and retrospective waivers of an employee's FMLA claims), with Faris v. Williams WPC-I, Inc., 332 F.3d 316, 320-22 (5th Cir. 2003) (holding that § 825.220(d) did not prohibit post-dispute settlement of claims). The preamble states that the DOL revised the

regulation "in the interest of clarity" in order to "make explicit" the DOL's long-held view that "employees and employers are permitted to agree voluntarily to the settlement of past claims without having first to obtain the permission or approval of the Department or a court." 73 Fed. Reg. 67987 (Nov. 17, 2008); see id. (stating that the DOL "intends, as it has always intended, for the waiver prohibition to apply only to prospective FMLA rights"). Thus, the district court properly concluded that the amended regulation was clarifying.[*]

Whiting alternatively maintains that to the extent § 825.220(d) allows settlement of past FMLA claims without court or DOL approval, the regulation must be struck down for being inconsistent with the FMLA. We disagree.

We judge the regulation's validity by applying the two-step analysis provided in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). Under that analysis, we first consider whether "Congress has directly spoken to the precise question at issue." Id. at 842-43. If Congress's intent is clear, then our analysis ends since

---

[*] Whiting contends that the DOL is being disingenuous when it asserts that its revision was intended merely as a clarification rather than a change in the law. However, the circuit split regarding the meaning of the original regulation lends strong support to the DOL's representation. See Brown, 374 F.3d at 260.

agencies "must give effect to the unambiguously expressed intent of Congress." Id. at 843. On the other hand, if the statute in question is silent or ambiguous regarding the issue in dispute, then we must determine whether the agency's interpretation is reasonable, and if it is, we must defer to the agency. See id.; Mayo Found. for Med. Educ. & Research v. United States, 131 S. Ct. 704, 714 (2011). Thus, the challenged regulation is controlling unless it is "arbitrary, capricious, or manifestly contrary to the statute." Chevron, U.S.A., Inc., 467 U.S. at 844; see United States v. Mead Corp., 533 U.S. 218, 227 (2001). For that reason, we must uphold the regulation so long as the agency articulates a rational basis for its action. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

Whiting correctly concedes that the FMLA is silent regarding the waiver of claims. We therefore proceed to the second Chevron step, determining whether the agency's interpretation is permissible. We conclude that it is.

The DOL explains in the preamble to the regulations its reasons for permitting unsupervised settlements of past FMLA claims, reasons that closely track those offered by the Fifth Circuit in Faris. The DOL notes that allowing such settlements "promotes the efficient resolution of FMLA claims and recognizes the common practice of including a release of a broad array of

7

employment claims in severance agreements." 73 Fed. Reg. 67988 (Nov. 17, 2008). The DOL also explains that allowing such waivers is consistent with the FMLA's language. In this regard, the DOL contrasts the FMLA with the Fair Labor Standards Act ("FLSA"), see 29 U.S.C.A. §§ 201-219 (West 1998 & Supp. 2010), which contains a provision authorizing the settlement of FLSA claims when the settlement is supervised by the DOL or a court. See 73 Fed. Reg. 67987 (Nov. 17, 2008); 29 U.S.C.A. § 216(c).

The DOL reasons that this distinction between the FMLA and the FLSA is justified by the difference in subject matter of the two statutes:

> The FLSA is a remedial statute setting the floor for minimum wage and overtime pay. It was intended to protect the most vulnerable workers, who lacked the bargaining power to negotiate a fair wage or reasonable work hours with their employers. . . . Like the [Age Discrimination in Employment Act ("ADEA"), see 29 U.S.C.A. §§ 621-634 (West 2008 & Supp. 2010)], the FMLA is not primarily focused on pay, and protects all segments of the workforce, from low wage workers to highly paid professionals.

73 Fed. Reg. 67987 (Nov. 17, 2008). The DOL adds that we have construed the ADEA as not requiring that settlements be supervised, see O'Shea v. Commercial Credit Corp., 930 F.2d 358, 361-62 (4th Cir. 1991) (applying ordinary contract principles to ADEA waivers).

Whiting contends that the revised regulation is impermissible because it conflicts with the view of the FMLA we

8

expressed in Taylor. In Taylor, we rejected the DOL's argument that the original § 825.220(d) allowed waivers of claims based on past FMLA violations. See Taylor, 493 F.3d at 457-62. In so doing, we concluded that the DOL's interpretation of its original regulation was at odds with the regulation's language. See id. at 457-59. We also reasoned that the DOL's construction would thwart the legislative policy that the FLSA was designed to effectuate, and that it was inconsistent with the meaning the DOL embraced at the time of promulgation. See id. at 459-62. Whiting now argues that, in light of our conclusion in Taylor that allowing unsupervised waivers of claims based on past FMLA violations would thwart the legislative policy behind the FLSA, the revised regulation's allowing such waivers cannot be a permissible interpretation of the statute. We disagree.

Simply put, the DOL is not bound by the observations we made in Taylor concerning our view of the legislative policy supporting the FMLA. After all, it is the DOL, not this court, that is charged with the authority to promulgate FMLA regulations. See 29 U.S.C.A. § 2654 (authorizing the Secretary of Labor to "prescribe such regulations as are necessary to carry out" the FMLA). Thus, regardless of whether we disagree with the DOL's interpretation of the FMLA, we must uphold its regulations so long as they are reasonable. See National Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 982

(2005) ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.").  The district court correctly determined that the revised regulation satisfies that standard.

III.

In sum, because we hold that the district court properly upheld the regulation at issue and applied it in this case, we affirm.

AFFIRMED