# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 29, 2012

No. 10-20808

Lyle W. Cayce
Clerk

NICHOLAS GRAY, On Behalf of Himself and Others Similarly Situated,

Plaintiff - Appellant

v.

MICHAEL WARREN POWERS,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and HAYNES, Circuit Judge and CRONE,
District Judge.[*]

EDITH H. JONES, Chief Judge:

Nicholas Gray sued his employer, Pasha Entertainment Group, L.L.C. ("PEG"), and one of its owners, Michael Warren Powers ("Powers"), for violating the minimum wage standards under the Fair Labor Standards Act ("FLSA"). Gray argued that as a member of this Texas limited liability corporation, Powers was an "employer" under the FLSA and was therefore personally liable for PEG's violations. The district court granted summary judgment to Powers, holding that he was not an employer under the FLSA. We AFFIRM.

---

[*] District Judge, Eastern District of Texas, sitting by designation.

No.  10-20808

## BACKGROUND

In 2007, Powers, Christian Bruckner, and Richard Stark formed PEG to run the Pasha Lounge as an investment in Houston, Texas.  Stephen Powers ("Stephen") and Kathleen Powers ("Kathleen") later joined the original members of PEG.  Powers contributed about $100,000 and supervised remodeling of the nightclub.  Stephen, Powers's brother, contributed as much as $80,000. A third member, Christian Bruckner, obtained the liquor license and personally guaranteed the lease of the building.  PEG operated Pasha Lounge from April 2007 until the club closed in September 2008.  Shortly after closing the nightclub, the members dissolved PEG.

After completion of the construction, Powers was not involved in the day-to-day operation of the Pasha Lounge.  Powers only visited the club on five or six occasions during the seventeen months the club was open for business.  He denies that he supervised any employee, defined employee job duties, controlled work schedules, or maintained employment records.  During his rare trips to the lounge, the bartenders would tell him how much they made in tips. Powers was, however, a signatory on PEG's checking account, along with Kathleen and the club's general manager, and he occasionally signed several pages of pre-printed checks.

Other members, Kathleen in particular, were much more involved in the operation of the club. Kathleen kept the books, was a signatory on the accounts, received nightly numbers, and served as the point of contact for the general manager.  The members of PEG collectively made significant business decisions such as hiring John W. Ritchey, Jr. as the first general manager.  Ritchey's job duties included hiring and firing staff, handling promotions, setting operation

2

No.  10-20808

hours, and supervising day-to-day operations.  In Ritchey's words, he was "in charge of pretty much everything that went on at the club."  Ritchey was later removed by the members of PEG because his salary was too expensive.

Appellant Gray was a bartender at Pasha Lounge from February to September 2007 and replaced Ritchey as general manager from March to September 2008.  Gray asserts that while he was a bartender under Ritchey's supervision, he and his fellow bartenders were not paid an hourly wage and were compensated solely by tips.  Gray considered Ritchey to be his boss at that time because Ritchey hired him and defined his job duties.  Though Gray asserts that Powers was another "supervisor," Gray admitted in a deposition that Powers was not involved in the club's day-to-day operations.  Powers rarely visited the club, but on one visit he did tell Gray that he was doing a "great job."  Also, on two occasions Powers asked Gray to serve specific people while Powers was a patron at the club.  Beyond these three instances, Gray could not remember any other occasion when Powers "directed" his work as a bartender.  Gray contends, however, that Powers asked him to fill in as general manager after Ritchey was let go.  Stephen disputes that fact because he allegedly enlisted Gray to fill in as general manager.

The district court was not persuaded by Gray's argument that Powers was an FLSA "employer" and granted summary judgment.  PEG suffered an adverse judgment when it failed to appear at trial.  Gray now appeals the grant of summary judgment to Powers.

3

No.  10-20808

## STANDARD OF REVIEW

This court reviews the district court's grant of summary judgment *de novo*. *Williams v. Henagan*, 595 F.3d 610, 615 (5th Cir. 2010).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The evidence should be viewed in the light most favorable to the non-moving party, and this court should "refrain from making credibility determinations or from weighing the evidence."  *Deville v. Marcantel*, 567 F.3d 156, 163-64 (5th Cir. 2009) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

## DISCUSSION

The FLSA requires "employers" to pay their employees a minimum wage. 29 U.S.C. § 206(a).  Tipped employees must receive a wage equal to the minimum wage, though tips can be counted as a part of that wage as long as the employer pays the tipped employee a minimum of $2.13 per hour.  29 U.S.C. § 203(m)(1)-(2); 29 C.F.R. § 531.50(a).  An " '[e]mployer'  includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  The Fifth Circuit uses the "economic reality" test to evaluate whether there is an employer/employee relationship.  *See, e.g.*, *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010); *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990).  The test originates in the Supreme Court's holding that "economic reality" should govern the determination of employer status under the FLSA.  *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33, 81 S. Ct. 933, 936 (1961).  To determine whether an individual or entity is an employer, the court considers whether the alleged employer: "(1) possessed the

4

No. 10-20808

power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Williams*, 595 F.3d at 620. In cases where there may be more than one employer, this court "must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test." *Graves*, 909 F.2d at 1556.

Gray asserts that both PEG and Powers were his employers. The district court, using the economic reality test, disagreed as to Powers. Our application of the four-factor test to Powers confirms that the district court was correct.

### 1.    **Power to Hire and Fire Employees**

While it is undisputed that Powers neither hired Gray as a bartender nor supervised him directly, Gray argues that as a member and officer of PEG, Powers inherently had the power to fire him. Powers and the other members of PEG together hired (and terminated) the general manager of the club collectively, and the general manager hired and supervised the bartending staff. Gray argues that Powers's ability to act collectively in regard to club management included the power to fire Gray as a bartender.

Appellant relies on the "joint employer" theory to support his position that a person can be an "employer" even without unilateral hiring and firing power. While the joint employer theory is a viable option in some cases, the Fifth Circuit has noted that "mere conclusory allegations and inferences are not sufficient to prove the required linkage. This court still must apply the economic realities test to *each individual* or entity alleged to be an employer and each must satisfy the four part test." *Graves*, 909 F.2d at 1556 (emphasis added). The only evidence Appellant cites is the collective power the PEG members exercised to

5

No.  10-20808

hire and fire general managers.  But Powers's participation in a joint decision
with co-owners of PEG proves nothing about whether Powers had the authority
individually to control employment terms of lower-level employees.

Lacking specific facts that Powers played a role in hiring or firing lower-
level employees, Appellant asks this court to infer such authority based on
Powers's position as a member and officer of PEG.  Appellant cites several cases
in which officers and shareholders of corporations have been held liable as FLSA
employers.    Each case, however, involves defendants who exerted actual
operational control from which a fact finder could infer power to hire and fire.[1]
The common theme throughout these cases is that employer status may be
appropriate where operational control coincides with one's position as a
shareholder, officer, or owner.  The cases do not suggest, however, that merely
being an officer or shareholder subjects an individual to FLSA liability.[2]  Like
the First Circuit, we recognize that "individuals ordinarily are shielded from
personal liability when they do business in a corporate form, and . . . it should
not lightly be inferred that Congress intended to disregard this shield in the

---

[1]  *See, e.g.*, *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 966 (6th Cir. 1991) (owner
and president of the company was an employer when he "had control over significant aspects
of the corporation's day-to-day functions" and set employee salaries); *Dole v. Solid Waste
Servs., Inc.*, 733 F. Supp. 895, 900-01 (E.D. Pa. 1989) (three shareholders with day-to-day
operational control were employers).

[2]  Note, for example, that in *Solid Waste Services* the court considered three
shareholders actively engaged in the management of the company to be employers but did not
lump the other two shareholders into that group.  733 F. Supp. at 901 (noting that "Lou and
Frank Mascaro are not actively engaged in the management of the companies' affairs").  In
*Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir. 1986), the court concluded that the president and
principal shareholder was not an employer because "[t]o be personally liable, an officer must
either be involved in the day-to-day operation or have some direct responsibility for the
supervision of the employee."

6

No.  10-20808

context of the FLSA." *Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 677 (1st Cir. 1998).  Given this understanding, a status-based inference of control cannot alone suffice to create a genuine fact issue whether Powers had power to hire and fire bartenders.

**2.     Supervision   or   Control   of   Employee   Work   Schedules or Conditions of Employment**

The district court found that no reasonable jury could find that Powers supervised or controlled employee work schedules or conditions of employment. Appellant argues that because Powers and his fellow members of the L.L.C. hired the manager, they cannot escape duties they owe employees by delegating the duties to a manager.  The cases Appellant relies on are distinguishable.

First, Appellant's reliance on *Chao v. Barbeque Ventures, L.L.C.*, 547 F.3d 938 (8th Cir. 2008), is misplaced.  In *Chao*, the Eighth Circuit stated that employers cannot delegate their payroll management duties to others and escape liability under the FLSA.  *Id.* at 942-43.  It was not Powers, but PEG, that hired Ritchey and assigned operational management to him.  *Chao* does not confuse the corporate entity decision of an FLSA employer with the participation of its owners, as Gray would have us do.  Second, we are not persuaded by Appellant's invocation of *Herman v. RSR Security Servs. Ltd.*, 172 F.3d 132, 135, 140 (2d Cir. 1999), in which the Second Circuit held that a fifty percent shareholder was an employer.  In *Herman,* the shareholder "exercised broad authority over RSR operations," including hiring employees, scheduling the time and location of the guards' work, and ordering a revision of the company's employment application forms.  *Id.* at 136-37, 140.  Gray, by contrast, failed to offer any evidence of

7

No. 10-20808

Powers's supervision and control over work schedules or employment conditions.[3]

The only possible instances in which Powers "supervised" Gray occurred when Powers told Gray he was doing a "great job" and when he twice asked Gray to serve specific individuals. In all three instances, however, Powers was present at the club socially. Moreover, Gray admitted that while he was a bartender he considered Ritchey to be his boss because Ritchey, not Powers, hired Gray and defined his job duties.[4] These isolated events are too paltry to support an inference of control by Gray.

**3.    Determination of the Rate or Method of Payment**

As the district court found, the evidence that Powers occasionally signed checks for the lounge and that bartenders casually told him how much money they made in tips during his rare trips to the club do not indicate that Powers determined the employees' rate or method of payment.

Appellant points to *Castillo v. Givens*, 704 F.2d 181, 188 (5th Cir. 1983), *overruled on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S. Ct. 1677 (1988), in which this court found a farm owner to be an employer despite his claim that he did not control the farm workers' pay or hours. His hired contractor supplied work hands, and the contractor, not the farm owner,

---

[3] Appellant also cites a recent Third Circuit case in which the complaining employee's direct supervisor, who exercised authority inter alia, to prepare her annual performance review and to discipline, was held to be an employer under the FLSA. *Haybarger v. Lawrence Cty. Adult Probation & Parole*, No. 10-3916, ___ F.3d ___, 2012 WL 265996 (3d Cir. Oct. 25, 2011). The case is factually inapposite.

[4] Gray also asserts that Powers asked him to step in as general manager. Even if this were true, Gray's FLSA claim only related to his time as a bartender, and he had stopped working as a bartender at the club for about a month before he returned as general manager.

No.  10-20808

controlled the laborers' pay and hours.  *Id.* at 183-84, 188-89.  But the farmer, of course, operated the farm on a day-to-day basis and directed "where to prepare fields, when to plow, when to plant, when to cultivate, and when to harvest." *Id.* at 183.  While the Fifth Circuit "has on several occasions found employment status even though the defendant-employer had no control over certain aspects of the relationship," it does not follow that someone who does not control any aspect of the employment relationship is an employer. *See id.* at 190. Consequently, we agree with the district court that no jury could reasonably find that Powers determined the bartenders' rate or method of payment.[5]

## 4.    Maintenance of Employee Records

There is no evidence that Powers, or anyone at Pasha for that matter, maintained employment records.  This factor cannot benefit Gray, who has the burden of proof.

### CONCLUSION

Applying the economic reality test to Powers, we reaffirm the district court's conclusion that no reasonable jury could have found him to be an employer.  The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies.  An individual's operational control can be shown through his power to hire and fire, ability to supervise, power to set wages, and maintenance of employment records.  While each element need not be present in every case, finding employer status when none of the factors is present would make the test meaningless.  We decline to adopt a rule that would

---

[5] *Castillo* is also distinguishable because there was no corporate form involved, and thus our reservations about finding individuals liable when the corporate form is used do not apply to *Castillo*.

No.  10-20808

potentially impose individual liability on all shareholders, members, and officers of entities that are employers under the FLSA based on their position rather than the economic reality of their involvement in the company.  In this case, Powers was simply not sufficiently involved in the operation of the club to be an employer.  The district court's judgment is AFFIRMED.