# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 24, 2012

No. 11-30671

Lyle W. Cayce
Clerk

JOHN T. MARTIN, an individual; JOHNATHON R. MARTIN, an individual; BRADLEY D. KEYES, an individual; MARTY BOGER, an individual,

Plaintiffs-Appellants

v.

SPRING BREAK '83 PRODUCTIONS, L.L.C., a California Limited Liability Company; SPRING BREAK '83 DISTRIBUTION, L.L.C., a California Limited Liability Company; BIG SKY MOTION PICTURES, L.L.C., a California Limited Liability Company; SPRING BREAK '83 LOUISIANA, L.L.C., a Louisiana Limited Liability Company; GEORGE BOURS, an individual; MARS CALLAHAN, an individual; RANDY CHORTKOFF, an individual; JOHN HEREMANSEN, an individual,

Defendants-Third Party Plaintiffs-Appellees

UNIDENTIFIED PARTIES, Does 1 through 10,

Defendants - Appellees

v.

INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES, Local 478; INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES, Local 798; INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES, MOVING PICTURE TECHNICIANS, ARTISTS AND ALLIED CRAFTS OF THE UNITED STATES, ITS TERRITORIES AND CANADA,

Third Party Defendants - Appellees

No. 11-30671

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JONES, Chief Judge, and OWEN and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:

Appellants John T. Martin ("J. T. Martin"), Johnathon R. Martin ("J. R. Martin"), Bradley D. Keyes ("Keyes"), and Marty Boger ("Boger") appeal the district court's grant of summary judgment on their Fair Labor Standards Act ("FLSA") claims in favor of Appellees Spring Break '83 Louisiana, L.L.C. ("Spring Break Louisiana"), Mars Callahan ("Callahan"), George Bours ("Bours"), John Hermansen ("Hermansen"), and Randy Chortkoff ("Chortkoff"). We AFFIRM the district court's judgment, concluding that individual Appellees Callahan, Bour, Hermansen, and Chortkoff are not employers under the FLSA and that Appellants released any FLSA claims against Louisiana Spring Break by accepting settlement payments for those claims.

## FACTS AND PROCEEDINGS

Appellants J. T. Martin, J. R. Martin, Keyes, and Boger were employed as grips—lighting and rigging technicians in the filmmaking and video production industries—with Spring Break Louisiana for the filming of *Spring Break '83* (the "movie"). Filming took place between October 6, 2007 and December 22, 2007 in and around Hammond, Louisiana. Throughout this filming period, Appellants were members of the International Alliance of Theatrical Stage Employees, Local 478 (the "Union"). In October 2007, the Union entered into a Collective Bargaining Agreement (the "CBA"), with Spring Break Louisiana. Under the CBA, Spring Break Louisiana recognized "the Union as exclusive representative of the employees in the bargaining unit." In addition, the CBA outlined the

2

No. 11-30671

procedure for Union members to follow when filing grievances against Spring Break Louisiana.

Toward the end of production of the movie, a number of parties to the CBA, including Appellants, filed a grievance against Spring Break Louisiana alleging that they had not been paid wages for work they performed. The Union sent a representative to investigate the merits of the claims. After his investigation, the representative concluded that it would be impossible to determine whether or not Appellants worked on the days they alleged they had worked. The Union and Spring Break Louisiana entered into a Settlement Agreement pertaining to the disputed hours allegedly worked by Appellants.

Before the Settlement Agreement was signed by Union representatives on November 3, 2009, Appellants filed a lawsuit on June 16, 2009 in the Superior Court of the State of California for the County of Los Angeles against Spring Break Productions '83, L.L.C.; Big Sky Motion Pictures, L.L.C.; Spring Break Louisiana; George Bours; John Hermansen; Mars Callahan; and Randy Chortkoff.[1] Appellees then removed the case to the United States District Court for the Central District of California, which subsequently transferred the case to the United States District Court for the Eastern District of Louisiana.

In a 20-page Order and Reasons, the district court granted Appellees' motion for summary judgment on June 24, 2011. Appellants appeal that order, contending that the district court erred in granting summary judgment in favor of the Appellees because: (1) Callahan, Bours, Hermansen, and Chortkoff were

---

[1] According to the declaration of Appellant J. T. Martin, Appellee Callahan wrote, directed, and produced the movie; Appellees Bours and Hermansen were in charge of overseeing the final payment of wages and investigating and resolving employee complaints relating to payment of wages; and Appellee Chortkoff was an executive producer for the movie and was in charge of all financial matters, including the payment of wages.

3

No. 11-30671

employers under the FLSA and (2) Appellants' claims under the FLSA were not released by the Settlement Agreement.[2]

## STANDARD OF REVIEW

"This Court reviews summary judgment de novo, using the same standards as the district court." *Haggard v. Bank of Ozarks Inc.*, 668 F.3d 196, 199 (5th Cir. 2012). Summary judgment is only proper where there is no "genuine dispute as to any material fact." Fed. R. Civ. P. 56. When reviewing a grant of summary judgment, we review the facts drawing all inferences most favorable to the party opposing the motion. *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). Moreover, we "refrain from making credibility determination or from weighing the evidence." *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009). "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial and summary judgment is proper." *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 272 (5th Cir. 2000) (citations omitted).

## DISCUSSION

1. Classification of Callahan, Bours, Hermansen, and Chortkoff as employers under the FLSA

---

[2] Appellants are abandoning their claims, pursued in district court, for breach of contract and violations of the LWPA, as well as all claims against Spring Break '83 Productions, L.L.C.; Spring Break '83 Distribution, L.L.C.; and Big Sky Motion Pictures, L.L.C. The only remaining claims are Appellants' FLSA claims against Defendant-Appellees Spring Break Louisiana, Callahan, Bours, Hermansen, and Chortkoff. Defendant-Appellees filed a third party complaint in district court against International Alliance of Theatrical Stage Employees, Local 478; International Alliance of Theatrical Stage Employees, Local 798; and International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States, Its Territories and Canada. This third-party complaint was dismissed as moot in the district court's June 24, 2011 Judgment dismissing Plaintiffs-Appellants' claims.

No. 11-30671

Appellants contend that the district court erred by finding that Callahan, Bours, Hermansen, and Chortkoff were not employers under the FLSA.[3] The district court concluded that the evidence, even when viewed in the light most favorable to the Appellants, did "not suggest that Plaintiffs depended upon the individual Defendants or that any of these Defendants could independently exercise control over the work situation." We conclude that the district court did not err.

We apply an "economic reality" test to determine whether an individual or entity is an employer for the purposes of the FLSA. *Gray v. Powers*, 673 F.3d 352, 354–55 (5th Cir. 2012) (citing to *Goldberg v. Whitaker House Co-op, Inc.*, 366 U.S. 28 (1961), to affirm summary judgment holding that appellee was not an employer under FLSA).[4] "To determine whether an individual or entity is an employer, the court considers whether the alleged employer: '(1) possessed the power to hire and fire employees; (2) supervised or controlled employee work schedules or conditions of employment; (3) determined the rate or method of payment; and (4) maintained employee records.'" *Gray*, 673 F.3d at 355 (quoting *Williams v. Henagan*, 595 F.3d 610, 615 (5th Cir. 2010)). "The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Id.* at 357. We examine the economic reality test factors, viewing all evidence in the light most favorable to Appellants, for each of the four individual Appellees. Notably, the sole source of evidence for Appellants'

---

[3] This question is determinative as to whether or not Callahan, Bours, Hermansen, and Chortkoff may be liable for Appellants' alleged unpaid wages. Under the FLSA, any employer who violates the FLSA minimum wage statute, 29 U.S.C. § 206, or the FLSA maximum hours statute, 29 U.S.C. § 207, is "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

[4] The district court could not cite to *Gray v. Powers*, which was not yet issued at the time of the district court's judgment, for a clear statement of the economic reality test.

argument that Callahan, Bours, Hermansen, and Chortkoff are employers under the FLSA is the declaration of J. T. Martin ("Martin Declaration").

A) Callahan

Relevant to the first economic reality test factor, the Martin Declaration alleges that Callahan had the ability to hire and fire employees and that Appellant Martin had personally witnessed Callahan terminate employees while working on the set. Therefore, Appellants provided evidence that this first factor should weigh in favor of finding Callahan to be an employer. However, the Martin Declaration contains no evidence that the other three economic reality test factors weigh in favor of finding Callahan to be Appellants' employer. In fact, Appellants presented nothing to rebut Callahan's sworn declaration in which he states he was not Appellants' direct supervisor, he did not hire the Appellants nor change their pay, he did not maintain documentation of the Appellants' employment, and he did not exercise substantial control over the terms and conditions of the Appellants' work.

Specifically as to the second economic reality test factor, the Martin Declaration tersely states that Callahan, "would issue instructions to myself as well as other employees." However, considering the evidence that Joy Czerwonky, the Line Producer, was the supervisor of all departments of the production, including the direct supervision of the Appellants, this single assertion fails to show that Callahan had control over work schedules or employment conditions. *See Weber*, 199 F.3d at 272 (5th Cir. 2000) ("If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial and summary judgment is proper."); *cf. Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 327–28 (5th Cir. 1993) (using economic reality analysis to hold that dancers at a club are employees where alleged employer set dancers' weekly work schedules, fined dancers for

absences and tardiness, and controlled dancers' dress, time spent in dressing room, music choice, restroom usage, and behavior at the club when not dancing).

Specifically as to the third economic reality test factor, Appellants assert in the Martin Declaration that in response to a complaint about late pay checks, Callahan stated that he "would make sure that the employees were paid." However, the Martin Declaration itself separately states that "[w]hile working on Spring Break '83, any payroll, as well as that for all the crew was handled by a payroll company known as Axium." Because, according to Appellants' own evidence, payroll for all the crew was handled by Axium, a separate payroll company, the record, even viewed in the light most favorable to Appellants, shows that Callahan did not have control over the rate or method of employee payment. *See Gray*, 673 F.3d at 357 (holding that evidence that an individual occasionally signed checked and that employees told him how much money they made in tips did "not indicate that [the individual] determined the employees' rate or method of payment").

Finally, as to the fourth economic reality test factor, Appellants presented no evidence that Callahan maintained any employment records. Thus, the fourth factor does not support a finding that Callahan was an employer under the FLSA. *See Gray*, 673 F.3d at 357.

B) Bours and Hermansen

Appellants have presented no evidence of Bours or Hermansen's fulfillment of the four economic reality test factors. Appellants did not rebut Bours's sworn declaration that he was "largely responsible for the editing and post-production aspects of the film, and had very little to do with the day to day operation of the shooting" of the movie; he did not hire employees or change employees' pay; he did not make any recommendations regarding the hiring of the Appellants; he did not make decisions regarding the Appellants' pay and did not supervise the Appellants; he did not maintain documentation of the

No. 11-30671

Appellants' employment; and he did not exercise substantial control over the terms and conditions of the Appellants' work.  Similarly, Appellants did not rebut Hermansen's sworn declaration that he was not involved with the shooting and production of the movie; he was employed by River Sig, L.L.C. for the production of a television show named Casting Call; he was also employed by Spring Break Louisiana as a producer but was largely responsible for the editing, music and post-production aspects of the film; he did not hire Appellants or change Appellants' pay for the movie; he did not make any recommendations regarding the hiring of the Appellants; and he did not make decisions regarding the Appellants' pay and did not supervise the Appellants.

The Martin Declaration instead asserts broadly that Bours and Hermansen had "complete authority to investigate and resolve any issues relating to the final payment of wages."  Although this contention relates to the third economic reality test factor, determination of rate or method of payment, this evidence will be considered in the context of the whole record of economic reality test proof. *See Wirtz v. Pure Ice Co.*, 322 F.2d 259, 262–63 (8th Cir. 1963); *cf. Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984) (holding that individual was an employer where "[i]t was only he who could authorize compliance with" the FLSA, including wage provisions).  Appellants presented no evidence that Bours or Hermansen determined the rate or method of payment, only that they could investigate payment-related complaints.  The power to oversee dispute resolution concerning pay is not determinative of the power to make decisions regarding the rate or method of payment.  Hermansen's sworn declaration correspondingly states that he and Bours were only involved with dispute resolution after the grievance was filed through the Union.

C) Chortkoff

Appellants presented no evidence that factors one, two, or four of the economic reality test weigh in favor of finding that Chortkoff was an employer

of Appellants. Appellants presented no evidence to rebut Chortkoff's sworn declaration in which he states that he was not involved with the day-to-day operation of the filming of the movie; he was not the Appellants' supervisor, nor did he direct them in any way; he did not hire the Appellants or change their pay; he did not supervise the Appellants; he did not maintain documentation of the Appellants' employment; and he did not exercise substantial control over the terms and conditions of the Appellants' work. As to the third factor, Appellants point to the Martin Declaration, which states that Chortkoff "was in charge of all the financial matters of the company including the payment of wages." However, again according to Appellants' own evidence, payroll for all the crew was handled by Axium, a separate payroll company. Correspondingly, Chortkoff states in his sworn declaration that he did not change Appellants' pay. Thus, Appellants' unsubstantiated contradistinction that Chortkoff "was in charge of all the financial matters of the company including the payment of wages" is not determinative. In the absence of any other economic reality factor, the district court could reasonably have found no genuine dispute as to employer status. *See generally Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994).

In sum, as held by the district court, whereas the Martin Declaration failed to demonstrate the economic reality test factors, the individual Appellees presented evidence that they were not employers of Appellants under the FLSA. Though Appellants presented evidence that, viewed in the light most favorable to them, points to the first economic reality test factor related to Callahan, the district court properly concluded that a rational trier of fact would find no genuine issue of material fact where the three remaining factors, as applied to Callahan, demonstrated that he was not Appellants' employer. *See Gray*, 673 F.3d at 357. As to Bours, Hermansen, and Chortkoff, the district court similarly did not err because no reasonable jury could have found them to be Appellants'

9

employers where none of the economic reality test factors dictated that conclusion. *See id.* ("While each element need not be present in every case, finding employer status when none of the factor is present would make the test meaningless."). Accordingly, the district court did not err by finding that Callahan, Bours, Hermansen, and Chortkoff were not employers of the Appellants.

2. Effect of the Settlement Agreement on FLSA claims against Spring Break Louisiana

The district court concluded that the plain language of the Settlement Agreement "is binding upon the [Appellants] in their individual capacities and prohibits those individuals from pursuing future legal action against Spring Break Louisiana after receiving their settlement payments." We agree.[5] The Settlement Agreement, in relevant part, states:

> The Union on its own behalf and on behalf of the IATSE Employees agrees and acknowledges that the Union has not and will not file any complaints, charges or other proceedings against Producer, its successors, licenses and/or assignees, with any agency, court, administrative body, or in any forum, on condition that payment in full is made pursuant to the terms of this Settlement Agreement.

The Settlement Agreement also states that the Union "has the full power and authority to enter into this Settlement Agreement on behalf of IATSE Employees and bind them in accordance with the terms hereof." By this plain language, the Appellants, who were IATSE Employees, were bound by its terms. Appellants contend, however, that the Settlement Agreement is unenforceable because they never signed it or agreed to it—instead, the Settlement Agreement was signed by Union representatives. However, Appellants do not dispute that they

---

[5] Because we have determined that the district court did not err in holding that Callahan, Bours, Hermansen, or Chortkoff were employers under the FLSA, our analysis in this section is limited to the effect of the Settlement Agreement upon Spring Break Louisiana's liability to Appellants.

received full payment for their claims pursuant the terms of the Settlement Agreement. Nor do Appellants dispute that they cashed the Settlement Agreement payment checks they received. The Appellants were members of the Union and, under the CBA, Spring Break Louisiana recognized "the Union as exclusive representative of the employees in the bargaining unit." Considering that Appellants, who were members of the Union, received and accepted full payment for their FLSA claims under the Settlement Agreement, the fact that Appellants did not themselves personally sign the Settlement Agreement does not render it unenforceable.[6] *See N.L.R.B. v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967) ("The employee may disagree with many of the union decisions but is bound by them.").[7]

Appellants argue with more elaboration that even if they released their rights to pursue their FLSA claims in the Settlement Agreement, that release is invalid because individuals may not privately settle FLSA claims. The district court, noting that this court has no binding precedent that resolves whether parties may privately settle a FLSA claim involving a bona fide dispute over whether the plaintiffs worked on days for which they seek unpaid wages,

---

[6] We have recognized that Unions have discretion regarding employee-member grievances and may negotiate settlements of employee-member grievances. *Freeman v. O'Neal Steel, Inc.*, 609 F.2d 1123, 1126 (5th Cir. 1980). In its role as the exclusive agent for all employees in the bargaining unit, a union "'has the power to sift out frivolous grievances, to abandon processing of a grievance which it determines in good faith to be meritless, and to settle disputes with the employer short of arbitration.'" *Id.* (quoting *Harris v. Chem. Leaman Tank Lines, Inc.*, 437 F.2d 167, 171 (5th Cir. 1971)).

[7] Appellants also contend that, because the Settlement Agreement was signed in November 2009, after Appellants removed this lawsuit to federal court on August 21, 2009, and the Settlement Agreement contains no explicit release of employees' individual claims, such individual claims are not extinguished by the Settlement Agreement. However, the Settlement Agreement specifically states that although "disputes remain between the parties as to the amounts that may be due," "the Union has agreed on its own account *and as the authorized collective bargaining representative on behalf of the IATSE Employees* to accept those amounts as provided herein" and that the "parties now desire to settle the dispute between them on the terms and conditions set forth herein." (emphasis added).

adopted the holding and logic of *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608 (W.D. Tex. 2005), that "a private compromise of claims under the FLSA is permissible where there exists a bona fide dispute as to liability." *Id.* at 634.

In *Martinez*, the plaintiff alleged that his employer owed him more than $3,000 in unpaid overtime, while the employer believed the plaintiff was only owed approximately $500 based on an analysis of the time cards. 361 F. Supp. 2d at 612, 631–32. The court in *Martinez* held that the plaintiff's acceptance of a check for $1,000 for settlement of all overtime claims at issue was a valid release of the plaintiff's FLSA rights and was enforceable in the litigation that followed the settlement. *Id.* at 631–32. In reaching this conclusion, the court in *Maritnez* noted, "parties may reach private compromises as to FLSA claims where there is a bona fide dispute as to the amount of hours worked or compensation due. A release of a party's rights under the FLSA is enforceable under such circumstances." *Id.* at 631.[8] Similarly, here, there is a bona fide dispute between Appellants and Spring Break Louisiana over the number of hours for which they are owed their set rate of pay. In fact, the Union representative conducted an investigation into the dispute and received conflicting information from various sources, ultimately concluding that it would be impossible to determine whether or not Appellants worked on the days they claimed they had worked in their grievance.[9] Approving of this rationale, we hold that the payment offered to and accepted by Appellants, pursuant to the Settlement Agreement, is an enforceable resolution of those FLSA claims

---

[8] In reaching its conclusion, the court in *Martinez* analyzed the history of the FLSA, its amendments, and caselaw and noted, "recent court decisions have held that FLSA claims subject to an arbitral decision are enforceable. Likewise, claims as to other statutory labor rights have generally been held waivable." *Id.* at 629–30 (internal citations omitted).

[9] In his deposition, the Union representative explained that other crew members disputed that Appellants had worked the hours they claimed to have worked.

predicated on a bona fide dispute about time worked and not as a compromise of guaranteed FLSA substantive rights themselves. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 714 (1945) ("Our decision . . . has not necessitated a determination of what limitation, if any, Section 16(b) of the [FLSA] places on the validity of agreements between an employer and employee to settle claims arising under the Act if the settlement is made as the result of a bona fide dispute between the two parties, in consideration of a bona fide compromise and settlement."); *see also D. A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 114–15 (1946) ("Nor do we need to consider here the possibility of compromises in other situation which may arise, such as a dispute over the number of hours worked or the regular rate of employment."); 29 U.S.C. § 253(a).

Notably, in *Thomas v. Louisiana*, 534 F.2d 613 (5th Cir. 1976), we held that a private settlement of FLSA claims was binding and enforceable where the settlement gave employees "everything to which they are entitled under the FLSA at the time the agreement is reached." *Id.* at 615. We explained that, "[a]lthough no court ever approved this settlement agreement, the same reason for enforcing a court-approved agreement i.e., little danger of employees being disadvantaged by unequal bargaining power[,] applies here." *Id.*[10] Here, Spring

---

[10] Appellants cite two decisions from other circuits, *Taylor v. Progress Energy, Inc.*, 415 F.3d 364 (4th Cir. 2005), and *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), to support their contention that FLSA claims may only be settled by court approval or by the Department of Labor. We do not find the Fourth Circuit's decision in *Taylor* applicable because the holding of *Taylor* dealt with settlement of Family and Medical Leave Act claims, and even in that context has been superceded, as recognized by the Fourth Circuit itself. *See Whiting v. The Johns Hopkins Hospital*, 416 F. App'x 312, 314–16 (4th Cir. 2011) (per curiam); *Taylor*, 415 F.3d at 374–75; *cf. Faris v. Williams WPC-I, Inc.*, 332 F.3d 316, 321 (5th Cir. 2003) (interpreting specific FMLA statutory and regulatory language to uphold a release of prospective FMLA claims). In *Lynn's Food Stores*, the Eleventh Circuit, the only court of appeals that has ruled on this issue, held thirty years ago that FLSA claims may not be settled without the approval of the Department of Labor or the courts. 679 F.2d at 1355. However, the dispute in *Lynn's Food Stores* had arisen as a result of a Department of Labor investigation and "the employees seemed unaware that the Department of Labor had determined that Lynn's owed them back wages under the FLSA, or that they had any rights at all under the statute. There is no evidence that any of the employees consulted an attorney

No. 11-30671

Break Louisiana and the Union agreed in the Settlement Agreement that the payments Appellants were paid pursuant to that agreement were the "amounts due and owing" for the disputed number of hours they claimed they had worked and not been paid for.  The Settlement Agreement was a way to resolve a bona fide dispute as to the number of hours worked—not the rate at which Appellants would be paid for those hours—and though Appellants contend they are yet not satisfied, they received agreed-upon compensation for the disputed number of hours worked.[11]

Finally, Appellants contend, citing *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 745 (1981),[12] that because the Supreme Court has held that a union cannot waive employees' rights under the FLSA through a collective bargaining agreement, they cannot have settled their FLSA claims in the

___

before signing the agreements.  Some of the employees who signed the agreement could not speak English." 679 F.2d at 1353–54.  The court in *Lynn's Food Stores* explained in that context that, "to approve an 'agreement' between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA." *Id.* at 1354.  Here, by contrast, Appellants were already benefitting from legal counsel before the Settlement Agreement was signed in November 2009.  In fact, Appellants knew about their rights under the FLSA and had retained attorneys at least by July 9, 2009, the date that Appellants' attorneys signed their first amended complaint, filed with the Superior Court of California for the County of Los Angeles, for, among other things, "overtime under the FLSA."  The money Appellants received and accepted, pursuant to the Settlement Agreement, for settlement of their bona fide dispute did not occur outside the context of a lawsuit, hence the concerns that the Eleventh Circuit expressed in *Lynn's Food Stores* are not implicated.

[11] The Settlement Agreement acknowledged the continued disagreement between the parties over the number of hours Appellants had worked: "Producer does not dispute that payments are due to the IATSE Employees . . . although disputes remain between the parties as to the amounts that may be due."

[12] In *Barrentine,* the plaintiff truck drivers were required to conduct safety inspections of their trucks before any trips and to transport a truck which failed an inspection to the employer's onsite repair facility, all without compensation.  450 U.S. at 730.  Pursuant to their collective bargaining agreement, the plaintiff truck drivers filed grievances against their employer for the unpaid time, alleging that the collective bargaining agreement entitled them to pay for that time. *Id.* at 730–31.  The grievance was presented to a grievance committee for a final and binding decision and was rejected without explanation. *Id.* at 731.

No. 11-30671

Settlement Agreement, which was arrived at through the Union-facilitated grievance procedure laid out in the CBA. *See Barrentine*, 450 U.S. at 745 ("FLSA rights . . . are independent of the collective-bargaining process. They devolve on petitioners as individual workers, not as members of a collective organization. They are not waivable."). Although the terms and conditions of Appellants' employment with Spring Break Louisiana were covered by a collective bargaining agreement, *Barrentine* is distinguishable. In *Barrentine*, the plaintiffs' grievances based on rights under the FLSA were submitted by the union to a joint grievance committee that rejected them without explanation, a final and binding decision pursuant to the collective bargaining agreement.[13] 450 U.S. at 731. Here, Appellants accepted and cashed settlement payments—Appellants' FLSA rights were adhered to and addressed through the Settlement Agreement, not waived or bargained away. The concerns the Court in *Barrentine* expressed, that FLSA substantive rights would be bargained away, *see id.* at 740 ("This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."), are not implicated by the situation here where Appellants' Union did not waive FLSA claims, but instead Appellants, with counsel, personally received and accepted compensation for the disputed hours. We reiterate that FLSA substantive rights may not be waived in the collective

---

[13] The Court's analysis in *Barrentine* acknowledges the fact that the plaintiffs' grievances were unsuccessful. 450 U.S. at 729–30 ("The issue in this case is whether an employee may bring an action in federal district court, alleging a violation of the minimum wage provisions of the Fair Labor Standards Act . . . after having unsuccessfully submitted a wage claim based on the same underlying facts to a joint grievance committee pursuant to the provisions of his union's collective-bargaining agreement.").

15

bargaining process, however, here, FLSA rights were not waived, but instead, validated through a settlement of a bona fide dispute, which Appellants accepted and were compensated for.  Therefore, the district court did not err by finding an enforceable release resolving this wage dispute.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Appellees Spring Break Louisiana, Callahan, Hermansen, Bours, and Chortkoff.