**Alexander STEELE, Plaintiff,**

**v.**

**STAFFMARK INVESTMENTS, LLC, a Delaware Limited Liability Company, and Newegg Inc., a Delaware Corporation, Defendants.**

**No. 16–cv–2069–SHL–cgc**

United States District Court, W.D. Tennessee, Western Division.

Signed 03/23/2016

---

Laura Ann Elizabeth Bailey, The Crone Law Firm, PLC, Memphis, TN, for Plaintiff.

Marcia Dawn McShane, Constangy, Brooks & Smith, LLP, Nashville, TN, for Defendants.

### ORDER DENYING PARTIES' MOTION FOR SETTLEMENT

SHERYL H. LIPMAN, UNITED STATES DISTRICT JUDGE

In this case, Plaintiff alleged violations of the Fair Labor Standards Act ("FLSA"), claiming that Defendant failed to pay Plaintiff the appropriate compensation for regular and overtime hours worked, and then terminated Plaintiff when he complained about his improper compensation. (ECF No. 1–1.) The parties agreed to a settlement of the dispute and filed a Stipulation of Dismissal. (ECF No. 9.) The Court denied dismissal, however, because the parties had failed to submit the terms of the settlement or any argument on the fairness and reasonableness of the settlement, as is required for FLSA settlements. (ECF No. 13.) The Court therefore required the parties to file the settlement and appropriate arguments. (ECF No. 13.) Instead, the parties filed a Motion for Settlement, within which they argued that the Court does not need to

approve the FLSA settlement, or, in the alternative, if the Court does need to approve the FLSA settlement, it should do so *in camera* and confidentially. (ECF No. 14.) For the reasons set forth below, the Court **DENIES** the Motion for Settlement, and again **ORDERS** the parties to submit the settlement and appropriate arguments in support thereof, or to rescind their Stipulation of Dismissal and litigate this case.

## I. *Court Approval of FLSA Settlement Agreements*

The circuits are split on whether settlements or stipulations of dismissal for FLSA claims require court approval. *Compare Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352 (11th Cir.1982) (requiring court approval), *and Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir.2015) (requiring court approval), *and Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir.2007) (requiring court approval), *with Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 256 (5th Cir.2012) (not requiring court approval). The Sixth Circuit has yet to rule definitively on the question; however, based on the unique purpose of the FLSA and the unequal bargaining power between employees and employers, this Court finds that FLSA settlements require approval by either the Department of Labor or a court.

The FLSA is not a trivial statute to be "interpreted or applied in a narrow, grudging manner." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597, 64 S.Ct. 698, 88 L.Ed. 949 (1944). When FLSA claims are brought before a court, that court must "discard[ ] formalities and adopt[ ] a realistic attitude, recognizing that we are dealing with human beings and with a statute that is intended to secure to them the fruits of their toil and exertion." *Id.* at 592, 64 S.Ct. 698; *see also id.* at 597, 64 S.Ct. 698 (the FLSA does not "deal with mere chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others.").

The legislative history of the Fair Labor Standards Act shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and wellbeing and the free flow of goods in interstate commerce. The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce.

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706–07, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) (footnote omitted). "Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352 (11th Cir.1982) (citing *O'Neil*, 65 S.Ct. at 902); *see also Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (noting that the Supreme Court has "frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act.").

In *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946), an employer failed to pay his employees overtime compensation for more

than three years. After raising this issue with the employer, the employees agreed to release all claims against the employer in exchange for full payment of overtime pay. The employees, however, later filed a lawsuit seeking liquidated damages under the FLSA for the overtime pay they had previously been denied. At that time, there was uncertainty as to whether these particular employees were covered by the FLSA, and, accordingly, the district court held that an accord and satisfaction had released all claims for liquidated damages "because there was a bona fide settlement of a bona fide dispute [of coverage]." *Id.* at 112, 66 S.Ct. 925. The circuit court reversed, and the Supreme Court affirmed the circuit court's decision, holding that "the remedy of liquidated damages cannot be bargained away by bona fide settlements of disputes over coverage." *Id.* at 114, 66 S.Ct. 925. Accordingly, when there are bona fide disputes over *legal* issues (such as the extent of FLSA coverage), a settlement agreement reducing or waiving damages is invalid. *Id.* at 116, 66 S.Ct. 925.

> It is realized that this conclusion puts the employer and his employees to an 'all or nothing gamble,' ... [but] [w]e think the purpose of the Act ... was to secure for the lowest paid segment of the nation's workers a subsistence wage, [which] leads to the conclusion that neither wages nor the damages for withholding them are capable of reduction by compromise of controversies over coverage. Such a compromise thwarts the public policy of minimum wages, promptly paid, embodied in the Wage–Hour Act, by reducing the sum selected by Congress as proper compensation for withholding wages.

*Id.*(internal quotation omitted); *see also Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) ("The same policy which forbids waiver of the statutory minimum as necessary to the free flow of commerce requires that reparations to restore damage done by such failure to pay on time must be made to accomplish Congressional purposes.").

■ "Although the Court in *Gangi* held that settlements of bona fide disputes as to coverage of the Act are invalid, it specifically *did not* 'consider ... the possibility of compromises in other situations which may arise, such as a dispute over the number of hours worked or the regular rate of employment.'" *Runyan v. Nat'l Cash Register Corp.,* 787 F.2d 1039, 1042–43 (6th Cir.1986) (emphasis in original) (quoting *Gangi,* 328 U.S. at 113, 66 S.Ct. 925). While the Sixth Circuit has not explicitly held that compromises over *factual* disputes are enforceable under the FLSA, in *Runyan* it held that such compromises are appropriate under the ADEA, analyzing the issue using the case law and history of the FLSA because the ADEA adopted the enforcement provisions of the FLSA. *Id.* at 1043–1044 ("In applying the law to the facts of this case, we are mindful that we must assume that Congress, by referring to the FLSA enforcement provisions in enacting the ADEA, was aware of judicial interpretation of the FLSA."). Accordingly, the *Runyan* holding may be transposed to the FLSA, such that settlements of *factual* disputes are appropriate under the FLSA, even when the settlements reduce the damages that would be due the employee under the FLSA. This reasoning, however, only answers half of the question currently before the Court— that is, whether a settlement over a factual dispute is appropriate, but not whether a court must approve such a settlement.

After finding that a compromise was appropriate when factual disputes arose under the ADEA, the Sixth Circuit then discussed "the importance of good faith in entering settlements and *in approving* a waiver of rights in this type of situation."

*Id.* at 1045 (emphasis added). "[C]ourts should not allow employers to compromise the underlying policies of the ADEA by taking advantage of a superior bargaining position or by overreaching." *Id.* at 1044–45. "In determining whether an ADEA settlement and release is valid, a court should apply the principles expressed by Justice Frankfurter that encourage 'amicable settlement' of honest differences . . . where overreaching or exploitation is not inherent in the situation.'" *Runyan,* 787 F.2d at 1045 (alteration in original) (quoting *Gangi,* 328 U.S. at 122, 66 S.Ct. 925 (Frankfurter, J., dissenting)). The *Runyan* holding indicates that the Sixth Circuit, if presented with the same issue under the FLSA, would require court approval of settlements or stipulations of dismissal.

The Eleventh Circuit, based on similar concerns over unequal bargaining power, held that any settlement of FLSA claims must be approved by either the Department of Labor ("DOL") or by the court. *Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350 (11th Cir.1982). Several other courts have followed. *See, e.g., Cheeks,* 796 F.3d at 206 (finding that FLSA falls under the "applicable federal statute" exception to Fed.R.Civ.P. 41(a)(1)(A), thus requiring court approval for stipulated dismissals); *Taylor v. Progress Energy, Inc.,* 493 F.3d 454, 460 (4th Cir.2007) (superseded by regulation on other grounds as stated in *Whiting v. Johns Hopkins Hosp.,* 416 Fed. Appx. 312 (4th Cir.2011) ("[U]nder the FLSA, a labor standards law, there is a judicial prohibition against the unsupervised waiver or settlement of claims.")); *Simmons v. Mathis Tire & Auto Serv., Inc.,* 2015 WL 5008220, at *1 (W.D.Tenn. Aug. 20, 2015) ("Where parties settle or compromise a Fair Labor Standards Act ('FLSA') back wage claim, the parties must seek court approval for the proposed settlement."). The Fifth Circuit, however, held that there is no need for court-approval of a privately-entered FLSA settlement. *Martin v. Spring Break '83 Prods., L.L.C.,* 688 F.3d 247, 256 (5th Cir.2012).

■ The parties argue that they should not be required to submit the settlement agreement for court approval for three reasons: first, the general provisions of Fed.R.Civ.P. 41 permit parties to stipulate to dismissal without court approval; second, the underlying concerns that encouraged other courts to require court approval in FLSA settlements are absent in this case; and, third, it is "bad" public policy to limit parties' dismissal rights. (ECF No. 14 at 7.) The Court finds that the parties' arguments fall demonstrably short of surmounting the public policy that favors court approval of FLSA settlements.

### A. Applicable Federal Statute Under Federal Rule of Civil Procedure 41

Federal Rule of Civil Procedure 41(a)(1)(A) provides that:

> Subject to . . . any applicable federal statute, the plaintiff may dismiss an action without a court order by filing: . . . (ii) a stipulation of dismissal signed by all parties who have appeared.

The parties first state that it makes no difference *why* they decide to voluntarily dismiss a case, likening that ability to a "freedom" belonging to the parties. This analysis is too simple. The first line of Rule 41 subjects the plaintiff's ability to dismiss an action without court approval to "any applicable federal statute," thus subrogating that ability to any contrary statutory provision. The parties argue, however, that the FLSA is not an "applicable federal statute" because "the plain language of the FLSA does not contain any provision conditioning settlement of claims on court approval." (ECF No. 14 at 4.) In support, the parties cite *Picerni v. Bilingual Seit & Preschool Inc.,* 925 F.Supp.2d 368, 375 (E.D.N.Y.2013), where a district

court found that the FLSA did not qualify as an applicable federal statute under Rule 41. (ECF No. 14 at 4.) *Picerni* was, however, overturned by the Second Circuit in *Cheeks*, 796 F.3d at 206. In *Cheeks*, the court found that the *Picerni* ruling was contrary to the "unique policy considerations underlying the FLSA." *Id.*

Despite the absence of explicit statutory text requiring court approval of FLSA settlements, the Second Circuit reasoned that "[r]equiring judicial or DOL approval of such settlements is consistent with what both the Supreme Court and our Court have long recognized as the FLSA's underlying purpose: 'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Id.* (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945)). The *Cheeks* Court went on to say that, "[e]xamining the basis on which district courts recently rejected several proposed FLSA settlements highlights the potential for abuse in such settlements, and underscores why judicial approval in the FLSA setting is necessary." *Id.* The "basis" the court was referring to was that, despite having representation, employees were still being shortchanged in settlement negotiations. For instance, one proposed settlement included the following dubious provisions:

> (1) "a battery of highly restrictive confidentiality provisions ... in strong tension with the remedial purposes of the FLSA;" (2) an overbroad release that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues;" and (3) a provision that would set the fee for plaintiff's attorney at "between 40 and 43.6 percent of the total settlement payment" without adequate documentation to support such a fee award.

*Id.* (quoting *Lopez v. Nights of Cabiria, LLC,* 96 F.Supp.3d 170, 175 (S.D.N.Y. 2015)). The Second Circuit overturned *Picerni* because it became clear that, even with representation, workers' rights were still not always fully protected.

Despite the FLSA's policy, the parties argue that the "legislative history ... belies an interpretation that Congress sought to restrict the ability of parties to dismiss pending actions under Rule 41." (ECF No. 14 at 5.) Specifically, because the FLSA was enacted in 1938, and Congress has yet to include explicit language making the FLSA an "applicable federal statute" under Rule 41, the parties argue that Congress does not intend for such dismissals or settlements to require court approval. As an initial matter, this argument is unpersuasive because "[t]he search for significance in the silence of Congress is too often the pursuit of a mirage." *Scripps–Howard Radio v. F.C.C.*, 316 U.S. 4, 11, 62 S.Ct. 875, 86 L.Ed. 1229 (1942). Proving even more fatal to the parties' argument is their inability to point to any moment when Congress considered, and rebuffed, a provision that would except the FLSA from Rule 41. "Generally, when the Court finds meaning in Congress' inaction, it points to specific legislative consideration of the issue and, either implicitly or explicitly, indicates that Congress' failure to act bespeaks a probable intent to reject the alternative(s)." William N. Eskridge, Jr., Interpreting Legislative Inaction, 87 Mich. L.Rev. 67 (1988–1989). That has not happened here, and the Court will not manufacture meaning from Congress' inaction.

## B. *Does Representation Guarantee Fair and Reasonable Settlements?*

Next, the parties argue that the need for court approval is vitiated when employees have legal representation, because the parties are in a superior position to determine the costs and benefits of settling their

dispute. (ECF No. 14 at 5–7.) The Court disagrees, based on the litany of cases where employees were shortchanged despite representation. *See Cheeks*, 796 F.3d at 206 (cataloging cases where settlements of FLSA claims were one-sided, in favor of the employer, despite representation).

The strongest authority in support of the parties' position is *Martin*, 688 F.3d at 247. A review of *Martin*, however, shows that employees require continued protection by the terms and policies of the FLSA. In *Martin*, 688 F.3d at 256, the Fifth Circuit held that there was no need for court-approval of a privately-entered FLSA settlement, negotiated by lawyers, where the dispute arose over liability and not substantive FLSA rights themselves. After reviewing the settlement, the court found that, "although no court ever approved this settlement agreement, the same reason for enforcing a court-approved agreement i.e., little danger of employees being disadvantaged by unequal bargaining power, applies here." *Martin*, 688 F.3d at 255–56 (internal quotation marks and citation omitted). The court, focusing on the fact that a bona fide factual dispute arose, found that the employees had been paid the "amounts due and owing for the disputed number of hours they claimed they had worked and not been paid for." *Martin*, 688 F.3d at 256.

In perhaps an ironic twist, the Fifth Circuit had to *review* the settlement agreement to find that its terms were acceptable before holding that private settlements of FLSA claims need not be approved by the court. Had the settlement agreement proven as unreasonable as many presented to various courts across the country, it is hard to fathom that the holding would have been the same. Moreover, one cannot extrapolate fairness and reasonableness to all FLSA settlements *Martin*'s single data point. *See, e.g., Bodle*, 788

F.3d at 164 (unwilling to extend *Martin* to private settlements of FLSA disputes when it was not clear that the dispute was factual); *Kraus v. PA Fit II, LLC*, 155 F.Supp.3d 516, 520–21, 2016 WL 125270, at *2 (E.D.Pa. Jan. 11, 2016) (FLSA settlement denied, despite representation of employees, because waiver was too broad); *Guareno v. Vincent Perito, Inc.*, 2014 WL 4953746 (S.D.N.Y. Sept. 26, 2014) (FLSA settlement denied, despite representation, due to clause preventing attorney from representing other employees in future similar actions against employer). Courts must also scrutinize *attorney's fees* when approving FLSA settlements. *Wolinsky v. Scholastic Inc.*, 900 F.Supp.2d 332, 336 (S.D.N.Y.2012). Because the important policies of the FLSA may be undermined even when employees are represented, the Court requires approval of any settlement or dismissal of FLSA claims.

## C. *Confidentiality Provisions*

The parties argue that, even if court approval is required for their settlement, the Court should review the settlement *in camera* and maintain its confidentiality under seal. (ECF No. 14 at 8.) The parties state that "[t]his alternative would protect the privacy rights of the parties[.]" (*Id.*) However, any ostensible "privacy" right that would be invaded by virtue of publishing the settlement agreement pales in comparison to both the purpose of the FLSA and the presumption of public access to any judicial document. *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1169 (6th Cir.1983) (finding that the privacy interests of the parties were insufficient to overcome the presumption of public access, particularly when the subject of the litigation pertains to public concerns); *Guareno v. Vincent Perito, Inc.*, 2014 WL 4953746, at *1 (S.D.N.Y. Sept. 26, 2014) (denying settlement agreement with confidentiality provision because one of the

purposes of the FLSA is to "to ensure that all workers are aware of their rights."). "A confidentiality provision in an FLSA settlement agreement both contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA rights." *Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1227, 1242 (M.D.Fla. 2010). Accordingly, this Court is unwilling to approve a settlement or dismissal of FLSA claims where the terms of the settlement are not available to the public.

For the aforementioned reasons, the parties' Joint Motion is **DENIED**. The parties may, therefore, proceed in one of two ways: 1) submit their settlement agreement to the Court for approval; or 2) litigate the FLSA claims. The Court **ORDERS** the parties to either file their settlement agreement with a memorandum in support of its fairness and reasonableness, or file a rescission of their stipulation of dismissal by April 4, 2016.

**IT IS SO ORDERED**, this 23rd day of March, 2016.