Benjamin OROZCO, Plaintiffs,

v.

Craig PLACKIS, Defendant.

No. A–11–CV–703 ML.

United States District Court,
W.D. Texas,
Austin Division.

June 13, 2013.

Aaron Michael Johnson, Christopher J. Willett, Austin, TX, for Plaintiffs.

Guillermo Ochoa–Cronfel, The Cronfel Firm, Austin, TX, for Defendant.

### *ORDER*

MARK LANE, United States Magistrate Judge.

Before the Court are Defendant's Renewed Motion for Judgment as a Matter of Law, filed April 5, 2013 (Clerk's Dkt. # 139); Plaintiff's Response to Defendant's Renewed Motion for Judgment as a Matter of Law, filed April 19, 2013 (Clerk's Dkt. # 150); Defendant's Reply in Support of Renewed Motion for Judgment as a Matter of Law, filed April 26, 2013 (Clerk's Dkt. # 151.); and Plaintiff's Sur–Reply in Support of His Response to Defendant's Renewed Motion for Judgment as a Matter of Law, filed May 13, 2013 (Clerk's Dkt. # 153). Having reviewed the filings by each party, as well as the relevant case law and the entire case file, the motion is now ripe for determination.

## I. BACKGROUND

Plaintiff Benjamin Orozco ("Orozco") filed this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* against Defendant Craig Plackis ("Plackis"), the founder of Craig O's Pizza and Pastaria ("Craig O's"). Orozco worked as a kitchen employee at the Craig O's San Marcos location from 2008 until 2011, when that location went out of business. Plackis franchised the San Marcos location to Sandra and Arnold Entjer. Orozco claimed Plackis failed to pay proper compensation for minimum wage and overtime hours that the FLSA requires.

This action was tried to a jury by consent. On December 12, 2012 the jury returned a verdict finding that (1) Plackis was Orozco's employer; (2) Plackis was engaged in an enterprise under the meaning of the FLSA; (3) Orozco was not ex-

empt from overtime wages under the FLSA; and (4) Plackis willfully violated the FLSA. The jury also determined Plaintiff's weekly hours from December 8, 2008 until May 30, 2011. Prior to the jury verdict, Defendant orally moved for judgment as a matter of law, which the Court denied. After the jury verdict and briefing by the parties, the Court entered judgment awarding Plaintiff monetary damages. Defendant has now renewed his motion seeking judgment as a matter of law. Plackis argues Orozco has failed to present evidence that he was Orozco's employer or that he was engaged in an enterprise under the meaning of the FLSA. The parties have filed responsive pleadings and the matter is now ripe for determination.

## II. APPLICABLE LAW

If a party makes a motion for judgment as a matter of law during trial, but the court does not grant the motion, the moving party may renew its motion no later than twenty-eight days after the entry of judgment. FED.R.CIV.P. 50(b). If a court finds that, considering all of the evidence proffered, "a reasonable jury would not have a legally sufficient evidentiary basis" to find in favor of a party on an issue or claim, the court may resolve the issue against the party and grant a motion for judgment as a matter of law. FED.R.CIV.P. 50(a)(1).

In considering a Rule 50(b) motion for judgment as a matter of law following a jury verdict, the court must. be "especially deferential" to the jury's findings. *SMI Owen Steel Co., Inc. v. Marsh USA, Inc.,* 520 F.3d 432, 437 (5th Cir. 2008). A court must deny a motion for judgment as a matter of law "unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Baisden v. I'm Ready*

*Prods., Inc.,* 693 F.3d 491, 498 (5th Cir. 2012) (quoting *Flowers v. S. Reg'l Physician Servs. Inc.,* 247 F.3d 229, 235 (5th Cir.2001)). *See also Am. Home Assur. Co. v.. United Space Alliance,* 378 F.3d 482, 487 (5th Cir.2004) (jury verdict must stand unless there is lack of substantial evidence, viewed in light most favorable to successful party, to support verdict). In deciding a Rule 50(b) motion, even if the court would reach a different conclusion as the trier of fact, the court is "not free to reweigh the evidence or to re-evaluate credibility of witnesses." *Brown v. Kinney Shoe Corp.,* 237 F.3d 556, 564 (5th Cir.2001) (quoting *Hiltgen v. Sumrall,* 47 F.3d 695, 699 (5th Cir.1995)).

## III. ANALYSIS

As set forth above, Defendant moves for judgment as a matter of law on two issues. He first contends there was insufficient evidence to establish he was Orozco's employer. Defendant also maintains there was insufficient evidence he was engaged in an enterprise under the meaning of the FLSA. The undersigned will address each issue in turn.

### A. Employer

Under the FLSA, any employer who violates the FLSA minimum wage statute or the FLSA maximum hours statute, is "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An employer includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). A "joint employment relationship generally will be considered to exist in situations" where the employers are "deemed to share control of the employee,

directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." 29 C.F.R. § 791.2(b). The Fifth Circuit applies an "economic reality" test to determine whether an individual or entity is an employer for the purposes of the FLSA. *Martin v. Spring Break '83 Productions, L.L.C.*, 688 F.3d 247, 251 (5th Cir.2012). *See Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33, 81 S.Ct. 933, 936, 6 L.Ed.2d 100 (1961) (holding "economic reality" should govern determination of employer status under FLSA). "To determine whether an individual or entity is an employer, the court considers whether the alleged employer: (1) possessed the power to hire and fire employees; (2) supervised or controlled employee work schedules or conditions of employment; (3) determined the rate or method of payment; and (4) maintained employee records." *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir.2012) (internal quotation omitted).

As an initial matter, the undersigned notes Plaintiff concedes Defendant did not maintain his employee records. However, the Fifth Circuit has made clear, each element of the multi-factor economic reality test "need not be present in every case." *Gray*, 673 F.3d at 357. The undersigned will thus turn to the evaluation of the other factors.

Defendant first suggests Orozco's own testimony acts as an admission that he had no evidence to establish Plackis was his employer. In pertinent part, Defendant cites to Plaintiff's testimony during trial that Plackis did not hire him, did not have the authority to fire him, did not set up his schedule, did not determine his rate of pay, did not determine the method of his payment, did not maintain his employment records and never had. any discussions with him about his position or work re-

sponsibilities. (Trial Tr. Vol. 1 at 129–32). Defendant suggests this testimony, as a matter of law, equates to Plaintiff having presented no evidence that Plackis was his employer.

However, as the Fifth Circuit eloquently stated "[s]ubjective beliefs cannot transmogrify objective economic realities." *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1049 (5th Cir.1987). *See also Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 667 (5th Cir.1983) ("A person's subjective opinion that he is a businessman rather than an employee does not change his status.") *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1315 (5th Cir.1976) (rejecting "uncontradicted testimony that operators believed they were in business for themselves as controlling FLSA employee status"). Given Plaintiff was employed as a kitchen employee, his lack of awareness or understanding of the business relationship between Plackis and Plackis' franchisor Sandra Entjer cannot be viewed as dispositive of the issue or as a legal bar to consideration of other evidence presented at trial.

Defendant also argues the franchise agreement does not provide any evidence that Plackis was Plaintiff's employer. In pertinent part the franchise agreement provides:

Franchisee shall at all times comply with all lawful and reasonable policies, regulations, and procedures promulgated or prescribed from time to time by Franchisor in connection with Franchisee's shop or business, including but not limited to standards, techniques and procedures in the installation or servicing of products or the rendering of other services, selection, supervision, or training of personnel, sales, advertising, and promotional techniques, programs and procedures, maintenance and appearance of the Franchise, the Franchise premises,

policies and procedures relating to warranties or guarantees, payment, credit, and accounting and financial reporting policies and procedures.

At all times during the term of this Agreement, Franchisee shall be charged with the following managerial responsibilities:

(a) Franchisee shall either devote Franchisee's full time effort to actively manage, or cause to be managed, the operation of Franchisee's shop.

(b) Franchisee shall, irrespective of any delegation of responsibility, reserve and exercise ultimate authority and responsibility with respect to the management and operation of Franchisee's shop.

(c) In the event that Franchisee employs a manager to run the day-to-day operations of the Franchise, Franchisee shall ensure that Franchisee's manager is adequately trained to manage the Franchise pursuant to the terms of this Agreement. Irrespective of Franchisee's employment of a manager, Franchisee must reserve and exercise the ultimate authority and responsibility with respect to the operation of the Franchise.

(Def. Trial Ex. 1 at 5 ¶ 8a). According to Defendant, the franchise agreement makes clear the ultimate authority and responsibility for management and operation of the franchise rests with the franchisee, not the franchisor. Moreover, Defendant points out the franchisor identified in the franchise agreement is Roxs Enterprises, Inc., not Plackis. Defendant thus contends any authority granted to the franchisor under the franchise agreement was not granted to Plackis individually.

Defendant's argument improperly focuses on the final sentence in the provisions set forth above. Read in context, the "ultimate authority" retained by the franchisee refers to the relationship between the franchisee and any manager hired by the franchisee, not the relationship between the franchisee and franchisor. Moreover, as Plaintiff points out, the franchise agreement specifically requires the franchisee to comply with policies and procedures promulgated by the franchisor for "selection, supervision, or training of personnel." As noted above, the regulations governing joint employment look to whether one employer "controls" or is "controlled by" the other employer. 29 C.F.R. § 791.2(b). Thus, the franchise agreement does provide evidence from which the jury could conclude Defendant had the ability and authority to control Sandra Entjer and personnel in the San Marcos location.

Nor is Defendant's contention that the franchisor was Roxs Enterprises, Inc., not himself individually, availing. Plackis stipulated he "was an officer and principal of the franchisor, Roxs Enterprises, Inc., at all times relevant to this lawsuit." (Def. Stip. Facts # 6 (Clerk's Dkt. # 89)). Plackis testified he was the founder and namesake of Craig O's and that he makes royalties from the franchised locations. (Trial Tr. Vol. I at 139). He further testified it was his role to train the franchisees as they started out and thereafter instruct and advise them on various aspects of business administration. (Trial Tr. Vol. I at 133–34, 158–62). And, finally, Plackis testified that he was the person who "[did] the operations part of the business" on behalf of Roxs Enterprises, Inc. (Trial Tr. Vol. 1 at 177). Again, the jury had evidence from which it could reasonably conclude Plackis individually had the ability and authority to control his franchisee's employees.

In addition, Plaintiff presented testimony that several employees at the San Marcos Craig O's location, including Rogelio Hernandez, also worked at the Southwest

Craig O's location which was owned by Plackis. (Trial Tr. Vol. 1 at 74–75; Trial Tr. Vol. 2 at 11–12, 104–08). Sandra Entjer noted employees who also worked at the Southwest location did not require training, thus if they were looking for a job, she would hire them. (Trial Tr. Vol. 2 at 105). Defendant suggests this testimony does not establish Plackis had the power to hire or fire employees at the San Marcos location. The undersigned agrees the testimony is not direct evidence, but disagrees that a jury could not reasonably draw the inference that Plackis hired employees for one Craig O's location and directed them to work at another.

Plaintiff also points to testimony which suggests Plackis had supervision and control over work schedules and conditions of his employment. Plackis testified it was his role and responsibility to train his franchisees on an ongoing basis to forecast profits and losses, including ways to minimize labor costs. He stated one way in which he did this was to examine the work schedules for his franchise locations. Plackis specifically testified he sat down with Sandra Entjer and advised her on cutting employees and hours worked. (Trial Tr. Vol. 1 at 187–90). Plackis testified he looked at specific work schedules with Sandra Entjer, including Plaintiff's schedule, in analyzing where to cut payroll costs. Plackis admitted he knew Plaintiff was working nearly 80 hours per week and was receiving a flat salary, and also admitted he advised Sandra Entjer to cut positions to reduce her payroll costs. (Trial Tr. Vol. 1 at 195, 198–201).

Plaintiff testified he observed the meeting between Sandra Entjer and Plackis. He further testified, about ten minutes after Plackis left, Sandra Entjer informed Plaintiff that as a result of the meeting she was no longer scheduling a dishwasher on weekdays. The work schedules confirm the change. Plaintiff testified his responsibilities thereafter expanded to include dishwashing. (Trial Tr. Vol. 1 at 107–10; Plf. Ex. 7).

Again, the undersigned agrees Plackis did not directly testify he controlled Plaintiff's work schedule. But the jury could certainly recognize the effect of Plackis' advice to Sandra Entjer to cut payroll costs was to increase the workload on Plaintiff, that is, his working conditions. And Plackis admitted he was aware Plaintiff was receiving a salary, from which the jury could reasonably infer Plackis was in effect advising Sandra Entjer concerning Plaintiff's effective rate of pay. Both of these inferences were certainly buttressed by Plaintiff's testimony about the meeting and its aftermath.

Plaintiff additionally points to his testimony that his work schedule was affected by the timing of the arrival of Rogelio Hernandez following completion of work at the Southwest location of Craig O's. That is, Plaintiff testified he could not leave until Rogelio Hernandez arrived. (Trial Tr. Vol. 1 at 100, 104). As the Southwest location was run by Plackis, a jury could reasonably infer Plackis' control over Rogelio Hernandez at the Southwest location affected Plaintiff's work schedule and effective rate of pay.

After review of the evidence in the light most favorable to Plaintiff, the undersigned concludes Defendant has not established that "a reasonable jury would not have a legally sufficient evidentiary basis" to conclude Plackis was not Orozco's employer. Accordingly, the motion for judgment as a matter of law is denied on this basis.

**B. Enterprise**

■■ The FLSA minimum wage statute and the FLSA maximum hours statute cover any employee who "is employed in

an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a) & 207(a).[1] In pertinent part, the FLSA defines an "enterprise" as:

> the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements.

29 U.S.C. § 203(r)(1). The FLSA further limits the definition of "enterprise" "an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1). The three main elements to find existence of an "enterprise" are related activities, unified operation or common control, and common business purpose. *Brennan v. Arnheim & Neely, Inc.,* 410 U.S. 512, 518, 93 S.Ct. 1138, 1142, 35 L.Ed.2d 463 (1973); *Reich v. Bay, Inc.,* 23 F.3d 110, 114 (5th Cir.1994).

Noting the FLSA does not define these elements, the Fifth Circuit has looked to the Code of Federal Regulations. The court stated:

> activities will be regarded as 'related' when they are the same or similar or when they are auxiliary or service activities such as warehousing, bookkeeping, purchasing, advertising, including, generally, all activities which are necessary to the operation and maintenance of the particular business.... The Senate Report on the 1966 amendments makes it plain that related, even if somewhat dif-

ferent, business activities can frequently be part of the same enterprise, and that activities having a reasonable connection with the major purpose of an enterprise would be considered related.

*Reich,* 23 F.3d at 114 (quoting 29 C.F.R. § 779.206). Regarding "common control" the court stated:

> The word "control" may be defined as the act of fact of controlling; power or authority to control; directing or restraining domination. "Control" thus includes the power or authority to control.... [It] includes the power to direct, restrict, regulate, govern, or administer the performance of the activities. "Common" control includes the sharing of control and it is not limited to sole control or complete control by one person or corporation. "Common" control therefore exists where the performance of the described activities are controlled by one person or by a number of persons, corporations, or other organizational units acting together.

*Reich,* 23 F.3d at 114–15 (quoting 29 C.F.R. § 779.221). A common business purpose exists if "the separate corporations engaged in complementary businesses, and were to a significant degree operationally interdependent." *Donovan v. Janitorial Servs., Inc.,* 672 F.2d 528, 530 (5th Cir.1982).

Defendant argues Plaintiff has failed to present sufficient evidence to establish Plackis individually is an enterprise as defined under the FLSA, and thus Plaintiff cannot recover against Plackis under the FLSA. As an initial matter, the undersigned notes Defendant's argument appears to conflate two separate concepts.

---

1. In his motion Plackis argues Plaintiff was not personally engaged in interstate commerce. However, as Plackis himself concedes, Plaintiff "rests his contention s solely on the enterprise coverage portions of the statute." (Def. Mot. ¶ 15). Whether Plaintiff meets the individual coverage prong of the FLSA need not be addressed.

Plackis maintains he is not individually an enterprise and thus concludes the coverage requirement of the FLSA is not satisfied. However, the FLSA does not require an employer to be an enterprise engaged in commerce. Rather, as set forth above, the FLSA requires an employee to be employed in an enterprise engaged in commerce. Accordingly, the undersigned will turn to whether Plaintiff has presented evidence sufficient to establish he was employed in an enterprise engaged in commerce under the meaning of the FLSA.

Defendant stipulated that "[t]he Craig O's San Marcos location had annual gross sales of at least $500,000 in 2009 and 2010, but not in 2008 or 2011," and "[a]t all times relevant to this lawsuit, the Craig O's Southwest location had annual gross sales of at least $500,000." (Def. Stip. Facts # 's 8–9 (Clerk's Dkt. # 89)). Thus, for Plaintiff to establish the propriety of his recovery for his wages in 2008 and 2011, he must have presented sufficient evidence of the related activities, unified operation or common control, and common business purpose between the two Craig O's locations.

Defendant apparently does not contest Plaintiff has presented sufficient evidence to show related activities and a common business purpose between the two locations, but instead focuses solely on the issue of unified operations or common control. As in the previous discussion, Defendant cites the provision of the franchise agreement which requires the franchisee to "reserve and exercise the ultimate authority and responsibility with respect to the operation of the Franchise." (Def. Trial Ex. 1 at 5 ¶ 8a). It is clear, however, when reviewing the entirety of the referenced provision, this reservation requires a franchisee who employs a manager to reserve authority and responsibility with respect to that manager. (*Id.*). As the cited provision does not address the relationship between Plackis and Sandra Entjer, it is of no evidentiary value in determining whether Plackis exercised common control over the San Marcos Craig O's location.

Moreover, as set forth above, the provision in the franchise agreement immediately preceding the provision cited by Defendant requires franchisees to "comply with all lawful and reasonable policies, regulations, and procedures promulgated or prescribed from time to time by Franchisor in connection with Franchisee's shop or business, including but not limited to standards, techniques and procedures in the installation or servicing of products or the rendering of other services, selection, supervision, or training of personnel." (*Id.*). The franchise agreement also requires franchisees and designated employees to attend initial as well as additional training programs offered by the franchisor. (Def. Trial Ex. 1 at 4 ¶¶ 7a–7b).

Further, as reviewed at length above, Plaintiff presented evidence from which a reasonable jury could infer that Plackis had the authority to, and did exercise that authority to, direct the business operations of the San Marcos location of Craig O's. Plaintiff also admitted at trial a substantial number of email communications between Plackis and Sandra Entjer concerning the business operations of the San Marcos Location of Craig O's. (Plf. Tr. Ex. 3). The undersigned has already concluded Plaintiff presented sufficient evidence from which a jury could reasonably conclude Plackis had sufficient control over Plaintiff to make Defendant an employer under the FLSA. In light of that conclusion, as well as the additional evidence cited above, the undersigned also concludes Plaintiff has presented sufficient evidence from which a jury could reasonably conclude Plackis had common control over the San Marcos location so as to find the Southwest location

and San Marcos location constituted a single enterprise under the FLSA.

Defendant finally suggests the fact that the Craig O's San Marcos location was a franchise exempts it from the definition of enterprise. Plackis relies on the Supreme Court's statement that the definition of enterprise under the FLSA includes a specific exemption, "making clear that . . . franchises . . . do not create 'enterprises' within the meaning of the Act." *Brennan,* 410 U.S. at 517–18, 93 S.Ct. at 1141–42. Despite the broad language of the Supreme Court, the FLSA definition of enterprise does not include the word franchise. Rather, the definition states:

> Within the meaning of this subsection, a retail or service establishment which is under independent ownership shall not be deemed to be so operated or controlled as to be other than a separate and distinct enterprise by reason of any arrangement, which includes, but is not necessarily limited to, an agreement, (A) that it will sell, or sell only, certain goods specified by a particular manufacturer, distributor, or advertiser, or (B) that it will join with other such establishments in the same industry for the purpose of collective purchasing, or (C) that it will have the exclusive right to sell the goods or use the brand name of a manufacturer, distributor, or advertiser within a specified area, or by reason of the fact that it occupies premises leased to it by a person who also leases premises to other retail or service establishments.

29 U.S.C. § 203(r)(1). Defendant maintains no court has found a franchise relationship a sufficient basis for finding enterprise coverage.

■ The undersigned agrees that the existence of a franchise arrangement alone is not sufficient to confer enterprise coverage. This is so because, as one of the cases cited by Defendant states "simply setting the standards without actual control of day-to-day operations is not sufficient to establish an employer-employee relationship between [a franchisor] and plaintiffs." *Singh v. 7–Eleven, Inc.,* 2007 WL 715488, at *5 (N.D.Cal. Mar. 8, 2007). However, Plaintiff here has presented evidence from which a jury could reasonably conclude that Plackis did exercise control over the operations of the San Marcos location. Thus, unlike the cases cited by Defendant, the existence of the franchise relationship is not the sole basis for conferring enterprise coverage. Conversely, the existence of a franchise relationship is not sufficient alone to establish the lack of enterprise coverage. *See White v. 14051 Manchester, Inc.,* 2012 WL 5994263, at *4 (E.D.Mo. Nov. 30, 2012) (concluding plaintiffs had sufficiently shown franchise arrangement of defendants who "permitted or suffered to work" all employees, even those at franchise locations, to demonstrate sufficient "control" for conditional FLSA class certification). Accordingly, the undersigned concludes Defendant has not carried his burden to show judgment as a matter of law is warranted.

## IV. CONCLUSION

Accordingly, Defendant's Renewed Motion for Judgment as a Matter of Law (Clerk's Dkt. # 139) is hereby **DENIED.**